J. L. KENT, Appellee, v. MUSCATINE, NORTH & SOUTH RAILWAY COMPANY et al., Appellants.

**Laborer's Lien on Railroad Tax Voted:** STEPS TO ENFORCE. Under Code, section 2091, providing that laborers shall have a lien on any tax voted in aid of a railway company for the amount due them for labor performed in the construction of the road, no statement of the demand due need be filed, or other act indicative of an intent to claim the lien done, to entitle the laborer to avail himself thereof, and hence the assignment of a laborer's time check carries with it the right to enforce the lien.

*Is assignable.* The lien is not personal to the laborer, but is assignable.

**Pleading:** UNDENIED ALLEGATIONS. Under Code, section 3622, undenied allegations of a petition must be treated as true.

*Appeal from Muscatine District Court.*—HON. W. F. BRANNAN, Judge.

MONDAY, JANUARY 27, 1902.

SUIT in equity to establish and enforce laborers' liens
on a tax voted in aid of the defendant railway company.
The trial court granted the relief prayed, and defendants
appeal.—*Affirm*ed.

*Jayne & Hoffman* and *Geo. W. Seevers* for appellants.

*Arthur Hoffman* for appellee.

DEEMER, J.—The latter part of section 2091 of the
Code reads as follows: "Laborers shall have a lien upon
any tax voted in aid of a railway company for the amount
due them for labor performed in the construction of said
railroad." From an opinion filed by the learned trial judge
we extract the following statement of facts material
to the questions presented on this appeal: "Labor
was performed by certain persons in the construc-
tion of the railway of said defendant. Time checks were
issued to these laborers by the foreman of the particular
work on which they were employed, and which represented
the amount of wages due the laborers at the time the checks
were issued. The time checks in this case were, by the
laborers to whom they were given, assigned to the plaintiff,
Kent, and represented about the sum of $300. The contract
for the construction of said railway was, it appears, made
with the Tennis Construction Company. Balch, Peppard
& Johnson became sub-contractors under the Tennis Con-
struction Company, and John S. Wolf & Co. became sub-
contractors under Balch, Peppard & Johnson. The work
done by the said laborers was on the portion sublet to the
said John S. Wolf & Co.; but, while a firm name was used
by the latter, yet it appears that John S. Wolf had no
partner. At the time this suit was commenced nothing was

due from the defendant railway company to either the Tennis Construction Company, Balch, Peppard & Johnson, or to John S. Wolf & Co. under their respective contracts. Wolf, it appears, absconded without paying the wages due on these time checks." It was under these circumstances that the laborers who held these time checks sold and assigned them to the plaintiff. Appellants contend that the lien given by section 2091 is a mechanic's lien; that it is a mere privilege to the laborer, and cannot be assigned until the laborer has filed a statement of the demand due, or done some other act indicative of an intent to claim a lien. If it be true that, in order to avail himself of the lien the laborer must file a statement of his demand, substantially as required by section 3092 of the Code, relating to mechanic's liens, then there is ground for saying that, until something is done looking toward the astablishment of a lien, an assignment of the debt does not operate as a transfer of the lien. *Merchant v. Water Power Co.*, 54 Iowa, 451; *Brown v. Smith*, 55 Iowa, 31; *Langan v. Sankey*, 55 Iowa, 52. However, these cases were reviewed in *Peatman v. Power Co.*, 105 Iowa, 1, and it is evident from that decision that some of the language used in the *Merchant Case* can no longer be considered authoratative. But we do not think section 2091 creates a mechanic's lien. True, a lien is given a laborer, but the general statutes relating to mechanic's lien do not apply to the lien thus created. The lien is upon the tax voted in aid of the construction of the railway, and no conditions or limitations are imposed on the right to establish and enforce it. It is purely a statutory lien, and, as the statute provides no remedy for its enforcement, a court of equity will assume jurisdiction for the protection and establishment thereof. *Davis v. Alford,* 94 U. S. 545 (24 L. Ed. 283); *Cairo & Vincennes Railroad Co. v. Fackney,* 78 Ill. 116; *Abraham v. Hall,* 59 Ala. 386. If the statute were simply declaratory

of a common law lien, no doubt the lienholder would have simply a right of detention, and, in the absence of statute, would have nothing which he could assign. *Caldwell v. Lawrence,* 10 Wis. 331; *Glascock v. Lemp,* 26 Ind. App. 175 (59 N. E. Rep. 342); *Tewksbury v. Bronson,* 48 Wis. 581 (4 N. W. Rep. 749). But the statute is not declaratory of the common law, and, as we have already said, the lien is purely a statutory creation. In such a case the character, operation, and extent of the lien are to be ascertained from the statute itself. The statute now under consideration does not require the filing of a statement or any other act of the claimant, as does the mechanic's lien law, and we are not justified in adding to its terms. *Rogers v. Currier,* 13 Gray, 129; *Wilson v. Rudd,* 70 Wis. 98 (35 N. W. Rep. 321).

II. Defendants further contend that the lien is personal to the laborer, and cannot be assigned. Here again we must determine the nature of the lien in order to properly decide the question argued. The lien, as will be observed, is not on property, but on taxes voted in aid of the construction of a railway, and it is manifest that possession is not essential to its legality or enforcement. Such liens are, by the general consensus of judicial opinion assignable. *Davis v. Bilsland,* 18 Wall. 659 (21 L. Ed. 969); *Duncan v. Hawn,* 104 Cal. 10 (37 Pac. Rep. 626); *Pearson's v. Tincker,* 26 Me. 384; *Tuttle v. Howe,* 14 Minn. 150 (Gil. 113), (100 Am. Dec. 205), *Skyrme v. Mining Co.,* 8 Nev. 219; *Iaege v. Bossieux,* 15 Grat. 83 (76 Am. Dec. 189). And an assignment of the claim will carry with it the right to the lien. *Westmoreland v. Foster,* 60 Ala. 448; *Sinton v. The R. R. Roberts,* 46 Ind. 476; *Murphy v. Adams,* 71 Me. 113 (36 Am. Rep. 299); *Duncan v. Hawn, supra; Chicago & N. E. R. Co. v. Sturgis,* 44 Mich. 538 (7 N. W. Rep. 213). The following quotation from *Murphy v. Adams, supra,* is a correct exposition of the law on this subject, as we understand it: "A laborer's

statutory lien is assignable, and not personal to the laborer. The object of a statute giving such a lien is to make certain the payment of the laborer, and it would detract much from the benefit designed to be conferred to hold that the laborer must personally incur all the delay and expense that not infrequently arise from the tedious litigation that follows an effort to enforce a lien of this character. It certainly would be laying a burden upon the laborer, for whose benefit the statute was designed, to say that he could not avail himself of the security which the statute gives him in the way most beneficial to himself."

III.   The last point made is that the statute construed as contended for by appellee, destroys or abridges, the right of contract, prevents proper and timely performance of contract obligations, and leads to a multiplicity of suits and interminable confusion.   Such arguments might properly be addressed to the legislature, but they can be given but little weight by the courts.   The statute was in force at the time the defendant made its contracts, and these contract rights and obligations must be subordinated to the provisions of the statute.   As said by Chief Justice Shaw in *Donahy v. Clapp,* 12 Cush. 440: "Such a contract, by force of the existing law when it was made, of which the owner is supposed to be cognizant, gives irrevocable power to his contractor to charge and bind his estate; and when such power is executed by the actual making of sub-contracts, it is in law the act of the owner hypothecating his own estate to the extent of the price of such labor."   There is no doubt of the constitutionality of the law.

It is also suggested that there is no evidence that any taxes were voted in aid of defendant company, or that defendant had any title to the taxes so voted.   A sufficient answer to this is that the evidence does show that taxes were voted; and, although the petition charged the voting of the tax to the defendant company, and that defendant was entitled to the tax, the defend-

ant made no denial therof in its answer. This answer contained certain specific denials, which did not refer to the voting of the tax in any manner. These undenied allegations of the petition must be treated as true. Code, section 3622, and cases cited.

The decree of the district court is right, and it is AFFIRMED.