# IN THE SUPREME COURT OF IOWA

No. 08–1588

Filed April 16, 2010

**AARON BALLALATAK,**

Appellant,

vs.

**ALL IOWA AGRICULTURE ASSOCIATION,**

Appellee.

_____

Appeal from the Iowa District Court for Linn County, Robert E. Sosalla, Judge.

Appellant challenges district court grant of summary judgment to appellee on appellant's wrongful discharge claim. **DISTRICT COURT JUDGMENT AFFIRMED.**

Matthew J. Reilly of Eells & Tronvold Law Offices, P.L.C., Cedar Rapids, for appellant.

Kelly R. Baier and Laura C. Mueller of Bradley & Riley, P.C., Cedar Rapids, for appellee.

**STREIT, Justice**.

A supervisor was fired after injecting himself into workers' compensation claims made by other employees. The trial court found his at-will status allowed the firing because no public policy protects an employee who internally advocates for the workers' compensation claim of another employee. We affirm for the same reason.

## I.    Background Facts and Proceedings.

Aaron Ballalatak worked for All Iowa Agriculture Association d/b/a Hawkeye Downs[1] as a security supervisor.[2] On September 14, 2006, two Hawkeye Downs security employees—Matt Kirk and Austin Pavlicek— were injured in a work-related vehicular accident. Pavlicek called Ballalatak at home after the accident to report he and Kirk were injured. Ballalatak drove to the scene, and after Pavlicek and Kirk were transported to the hospital, Ballalatak filled out an accident report.

Hawkeye Downs General Manager Roy Nowers became involved in addressing the accident. Nowers sent an email to Ballalatak and another supervisor instructing them, as well as the injured employees, to meet with Nowers before they returned to work. Ballalatak and Pavlicek met with Nowers together. Ballalatak testified Nowers told Pavlicek not to worry because his prescriptions and lost wages would be taken care of. Eventually, the injured employees, Pavlicek and Kirk, became concerned they would not receive workers' compensation benefits for their injuries. Pavlicek or Kirk told Ballalatak that they had been informed the claims would not be covered.

---

[1]The parties refer to defendant-appellee as Hawkeye Downs, and this court will do the same.

[2]Hawkeye Downs contends Ballalatak was not a supervisor and was instead a coemployee. Because the district court granted summary judgment to Hawkeye Downs, to the extent this is a material fact, this court must draw all inferences, including that Ballalatak was a supervisor, in Ballalatak's favor.

Ballalatak called Nowers to relay these concerns. The accounts of this conversation differ. Ballalatak claims he explained the concerns and mentioned Nowers had previously assured Pavlicek in Ballalatak's presence that he shouldn't worry about coverage for lost wages and prescriptions. Ballalatak claims Nowers then denied making the comment and asked whether Ballalatak was calling him a liar. Ballalatak told Nowers that Kirk and Pavlicek could hire an attorney to ensure they received workers' compensation benefits, and Nowers responded by stating, "make sure they spell my name right," a statement Nowers admits making "out of frustration." Nowers contends Ballalatak was agitated, insubordinate, and inappropriately questioned Nowers about employees' personal information.

It is undisputed Nowers fired Ballalatak during this phone call. Ballalatak contends he was fired for inquiring into whether the company, Hawkeye Downs, was fulfilling its workers' compensation obligations to Kirk and Pavlicek. Nowers contends Ballalatak was fired for insubordination. Ballalatak brought suit alleging tortious discharge against public policy. The district court held that even if Ballalatak was fired for attempting to help Kirk and Pavlicek receive workers' compensation benefits, Ballalatak failed to state a claim because no public policy protects supervisors or coemployees from termination for aiding injured employees in claiming workers' compensation benefits. Ballalatak appealed.

## II.    Scope of Review.

This court reviews a district court's grant of summary judgment for correction of errors at law. *Campbell v. Delbridge*, 670 N.W.2d 108, 110 (Iowa 2003). Summary judgment is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). This court reviews the record in

the light most favorable to the nonmoving party. *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 228 (Iowa 2004). All legitimate inferences will be drawn in favor of the nonmoving party. *Tetzlaff v. Camp*, 715 N.W.2d 256, 258 (Iowa 2006).

**III.  Merits.**

**A. Overview.** Generally, an employer may fire an at-will employee at any time. *Abrisz v. Pulley Freight Lines, Inc.*, 270 N.W.2d 454, 455 (Iowa 1978). However, under certain circumstances we recognize a common law claim for wrongful discharge from employment when such employment is terminated for reasons contrary to public policy. *Lloyd*, 686 N.W.2d at 228. To support a claim of wrongful discharge, the employee must show:

> (1) existence of a clearly defined public policy that protects employee activity; (2) the public policy would be jeopardized by the discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason for the employee's discharge; and (4) there was no overriding business justification for the termination.

*Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 761 (Iowa 2009).

The tort of wrongful discharge exists as a narrow exception to the general at-will rule, *id.* at 762, and this court is careful to ground recognition of such claims in "a well-recognized and defined public policy of the state." *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (1988) *modified by Springer v. Weeks & Leo Co.*, 475 N.W.2d 630, 632–33 (Iowa 1991). *Jasper* explained that this court has recognized four categories of activities protected by public policy in Iowa law: "(1) exercising a statutory right or privilege, (2) refusing to commit an unlawful act, (3) performing a statutory obligation, and (4) reporting a statutory violation." *Jasper*, 764 N.W.2d at 762 (citations omitted).

**B. Workers' Compensation Policy.** Ballalatak claims he was fired for raising concerns to his employer, Hawkeye Downs, about

potential mishandling of two employees' workers' compensation claims. In *Springer*, this court held that "discharging an employee merely for pursuing the statutory right to compensation for work-related injuries offends against a clearly articulated public policy of this state." *Springer,* 429 N.W.2d at 559. The court relied upon Iowa Code section 85.18 (1987), which provides, "[n]o contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided." *Id.* at 560. This court found the statute to be a clear expression of the public policy of the state of Iowa. *Id.*

Ballalatak argues the public policy interest in allowing employees to pursue their statutory rights to workers' compensation benefits should be understood to extend to supervisors who advocate on behalf of or otherwise attempt to help those whom they supervise to receive such benefits.

Hawkeye Downs argues there cannot be a public policy which supports Ballalatak's actions because he was inquiring into confidential medical issues concerning other employees. At this point in the proceedings, we must construe all inferences in Ballalatak's favor. *Tetzlaff*, 715 N.W.2d at 258. Even though discussing workers' compensation claims may involve medical matters, Ballalatak does not allege he was interested in the medical records of either Kirk or Pavlicek. Instead, Ballalatak claims he had been told by Kirk and Pavlicek that their workers' compensation claims were denied and argues this was because Hawkeye Downs had failed to process and submit important paperwork. Ballalatak alleges he was inquiring with Nowers whether Hawkeye Downs was failing to abide by its obligations to injured employees, not investigating the specific medical claims of Kirk and Pavlicek.

Although Hawkeye Downs also contends Ballalatak was fired for the insubordinate manner in which he injected himself into the workers' compensation claims of other employees, for purposes of this review, we must construe all inferences in Ballalatak's favor. Therefore, we must determine whether Iowa public policy protects supervisors or coemployees who inquire about their employer's compliance with the worker's compensation laws as they relate to those they supervise or to their coemployees.

This court has repeatedly recognized public policy protection for employees who exercise their own statutory rights. *See Lara v. Thomas*, 512 N.W.2d 777, 782 (Iowa 1994) (right to pursue partial unemployment benefits); *Springer*, 429 N.W.2d at 559 (right to file workers' compensation claim). This court has also recognized that public policy protects employees who refuse to violate statutory or administrative regulations or to commit an unlawful act. *See Jasper*, 764 N.W.2d at 767–68 (holding evidence supported finding that employee was discharged because she refused to violate state daycare staff-to-child ratio requirements); *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 286 (Iowa 2000) (finding refusal to commit perjury to be protected by public policy). Ballalatak was not fired for attempting to secure his own statutory rights nor was he fired for refusing to violate workers' compensation law. Instead, taking the facts in the light most favorable to Ballalatak, he was fired for his attempt to ensure his employer did not violate the statutory rights of other employees.

In *Jasper,* this court rejected the argument that an employee can only state a claim if a suspected violation by the employer is reported to the proper authorities. *Jasper,* 764 N.W.2d at 767–68. We found a violation of public policy when an employee was fired for her refusal to reduce staff in violation of the department of human services regulation

regarding daycare staff-to-child ratios. *Id.* Jasper noted that an important public policy—daycare staff-to-child ratios—"would be thwarted if an employer could discharge an employee for insisting the ratios be followed." *Id.* at 767. In *Jasper*, this court's identification of public policy was based on the employee's refusal to engage in illegal activity. We have not addressed, however, whether an employee may find public policy support for internal complaints where that employee has neither been asked to engage in the allegedly unlawful behavior nor reported the allegedly unlawful activity to the proper authorities.

The Eighth Circuit has suggested that Iowa courts would recognize protection for internal whistle-blowing in certain circumstances. In *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 902 (8th Cir. 2004), the court held the Iowa Supreme Court would recognize a wrongful discharge claim where an employee complains internally about safety issues to the employer. The court based its holding on the Iowa Occupational and Safety Health Act (IOSHA). *Kohrt*, 364 F.3d at 899. It noted that IOSHA declares the public policy of the state is " 'to stimulate employers and employees to institute new and perfect existing programs for providing safe and healthful working conditions.' " *Id.* (quoting Iowa Code § 88.1 (2003)). The Eighth Circuit also noted Iowa Code section 88.9(3) provides protection against discharge for any employee who files a safety complaint under IOSHA. *Id.* at 899–900. The court held that although these statutes did not expressly provide protection from discharge for internal safety complaints, the public policy of encouraging employees "to institute new and to perfect existing safety programs" would be undermined if an employee could be discharged for doing what the policy encourages. *Id.* at 902.

*Kohrt* and *Jasper* suggest internal whistle-blowing may be protected in certain circumstances. However, as noted above, all

wrongful discharge claims must be based on "a well-recognized and defined public policy of the state." *Springer*, 429 N.W.2d at 560. In all cases recognizing a public-policy exception, this court has relied on a statute or administrative regulation. *Jasper*, 764 N.W.2d at 762, 764. The use of statutes maintains the narrow public policy exception and "provide[s] the essential notice to employers and employees of conduct that . . . can lead to tort liability." *Id.* at 763.

Ballalatak makes two statutory arguments. First, Ballalatak points to the general requirement that employers compensate employees under the workers' compensation statutory scheme, coupled with this court's previous protection of an employee's right to seek such compensation. *See Springer*, 429 N.W.2d at 560–61. Ballalatak relies on Iowa Code section 85.18 (2005), cited by this court in *Springer*, 429 N.W.2d at 560, for the public policy supporting workers' compensation claims: "[n]o contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter except as herein provided." Employer obligations under the workers' compensation act can also be found in Iowa Code section 85.3(1), which states:

> Every employer, not specifically excepted by the provisions of this chapter, shall provide, secure, and pay compensation according to the provisions of this chapter for any and all personal injuries sustained by an employee arising out of and in the course of the employment . . . .

Iowa's workers' compensation statutes provide a clear public policy expression that employers are required to compensate employees for injuries arising out of and in the course of employment. Hawkeye Downs did not instruct Ballalatak to take steps to circumvent Hawkeye Downs' obligations under these statutes. Here, we must determine whether the

statutes provide support for internal complaints based on a concern that the employer may not be complying with workers' compensation laws.

Ballalatak points to other Iowa statutes prohibiting retaliation against employees other than the one who was injured or filed a claim. IOSHA prohibits discharge of an employee "because of the exercise by the employee on behalf of . . . others of a right afforded by this chapter." Iowa Code § 88.9(3). Iowa Code section 91A.10(5) prohibits discharge for an employee who "has cooperated in bringing any action against an employer" relating to unpaid wages. Iowa Code section 135C.46 protects health care facility employees who participate in a proceeding under that chapter. Iowa Code section 216.11 protects those who lawfully oppose discrimination in the workplace. These statutes provide no support for Ballalatak's argument because they demonstrate the Iowa legislature has exercised its authority in other circumstances to prohibit retaliation against employees who cooperate or report employer behavior by which they are not directly impacted. We cannot infer that legislation in other specific areas extends to the workers' compensation code.

Ballalatak also notes that as the supervisor for Kirk and Pavlicek, the company's internal policy required him to "maintain an open line of communication to his/her supervisor or the General Manager in matters which effect All Iowa or an employee." Ballalatak argues he was relaying concerns that Hawkeye Downs was violating workers' compensation laws and was, in fact, required to relay those concerns by Hawkeye Downs' own employee policies. We have previously held, however, that public policy cannot be derived from internal employment policies or agreements. *See Jasper*, 764 N.W.2d at 762.

This is not a case where Ballalatak refused to participate in a scheme to prevent employees Kirk and Pavlicek from receiving deserved workers' compensation benefits or reported concerns to the proper

authorities. His alleged actions here are not protected by a clearly expressed public policy. The Iowa legislature has recognized numerous areas in which employees must be protected for their complaints, even if they are not personally affected by the employer's policy, such as IOSHA, civil rights statutes, unpaid wages, or complaints about health care facilities. These statutes suggest the Iowa legislature understands the public policy implications in choosing to protect employees other than the aggrieved employee, but has chosen not to do so in the workers' compensation arena. Although according to the facts as presented by Ballalatak, his motives were to ensure compliance with the law and benefits for those under his supervision, as well as comply with Hawkeye Downs' own employee policies, Ballalatak has not pointed to any Iowa law which clearly expresses protection for such actions. The public policy found in Iowa's workers' compensation statutes strongly protects injured employees, but does not extend to coworkers or supervisors who express concerns regarding whether the injured employees will be properly compensated.

C. **Right to Consult an Attorney.** Ballalatak also argues he was fired because he told Nowers that Kirk and Pavlicek might contact an attorney to make sure they received their workers' compensation. Ballalatak argues public policy prevents discharge for this reason. In support, he points to *Thompto v. Coborn's Inc.*, 871 F. Supp. 1097, 1120–21 (N.D. Iowa 1994). *Thompto* held that the Supreme Court of Iowa would likely recognize employee termination based on the employee's threat to consult an attorney as a violation of public policy. *Thompto*, 871 F. Supp. at 1120–21. *Thompto* based this conclusion on Iowa's Code of Professional Responsibility for Lawyers, which articulates a public policy that citizens of the state should have access to professional legal services. *Id.* at 1120. *Thompto* also noted protections for filing

complaints asserting unpaid wages or civil rights violations would be meaningless if the employees were not protected in an attorney consultation to determine whether they had a right to file such a complaint. *Id.* at 1121.

Ballalatak argues this general public policy protects his assertion that Kirk and Pavlicek might contact an attorney as the "next step." We cannot accept this argument. Regardless of whether this court would recognize a right to consult or threaten to consult one's own attorney, no public policy protects Ballalatak in a threat made on Kirk and Pavlicek's behalf. *Thompto* demonstrates concern that individual workers will be unable to enforce their rights if they are prevented from consulting an attorney. There is no suggestion here that Kirk or Pavlicek was prevented from consulting an attorney or would have been fired had they consulted one. Ballalatak is not Kirk or Pavlicek's representative and had no authority to assert their right to consult an attorney.

## IV. Conclusion.

Iowa law does not protect an employee who advocates internally for another employee's workers' compensation claim or internally raises concerns about the employer's compliance with workers' compensation statutes as it relates to another injured employee. Iowa law also does not protect an employee who asserts that other employees may contact an attorney regarding their workers' compensation rights. For these reasons, the district court did not err in granting summary judgment to Hawkeye Downs.

**DISTRICT COURT JUDGMENT AFFIRMED.**