# IN THE SUPREME COURT OF IOWA

No. 10–0094

Filed September 9, 2011

**NATHAN BERRY,**

      Appellant,

vs.

**LIBERTY HOLDINGS, INC.**
a/k/a **LIBERTY READY MIX,**

      Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Joel D. Novak, Judge.

An employer seeks further review of a decision by the court of appeals reinstating a wrongful discharge claim after the district court granted the employer's motion to dismiss. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Kenneth R. Munro of Munro Law Office, P.C., Des Moines, for appellant.

Kerrie M. Murphy and Julie L. Tomka of Gonzalez Saggio & Harlan LLP, West Des Moines, for appellee.

**WIGGINS, Justice.**

The sole issue in this appeal is whether Iowa Code chapter 668 (2007), Iowa's comparative fault statute, contains a clearly defined and well-recognized public policy of this state limiting an employer's discretion to discharge an at-will employee. The district court sustained an employer's motion to dismiss a wrongful discharge claim, where the employee based the wrongful discharge claim on the allegation that the employer discharged him for filing a personal injury lawsuit against a company under common ownership with his employer. Our court of appeals reversed. Because chapter 668 does not express a clearly defined and well-recognized public policy of this state that would limit an employer's discretion to discharge an at-will employee, we vacate the decision of the court of appeals and affirm the judgment of the district court.

### I. Scope of Review.

We review a district court's order granting a motion to dismiss for correction of errors at law. *U.S. Bank v. Barbour*, 770 N.W.2d 350, 353 (Iowa 2009). In conducting our review, "[w]e view the petition in the light most favorable to the plaintiff, and will uphold dismissal only if the plaintiff's claim could not be sustained under any state of facts provable under the petition." *Griffen v. State*, 767 N.W.2d 633, 634 (Iowa 2009) (quoting *Sanford v. Manternach*, 601 N.W.2d 360, 363 (Iowa 1999)) (internal quotation marks omitted). In testing the legal sufficiency of the petition, we accept the facts alleged in the petition as true. *McGill v. Fish*, 790 N.W.2d 113, 116 (Iowa 2010); *Geisler v. City Council of Cedar Falls*, 769 N.W.2d 162, 165 (Iowa 2009).

## II. Background Facts and Proceedings.

From the facts pled in the petition, we find the following facts as true. Brent Voss is a partial owner of two companies, Liberty Holdings, Inc. and Premier Concrete Pumping, L.L.C. In 2004, Nathan Berry began working for Liberty Holdings. On June 5, 2006, a concrete pumper truck owned by Premier struck and injured Berry, who was on his way home from work. Berry filed a personal injury lawsuit against Premier for the injuries he sustained in the collision. Berry ultimately settled this claim within the policy limits of Premier's insurance coverage.

Approximately nine months after the settlement, on May 1, 2009, Liberty Holdings terminated Berry's employment. Subsequently, Berry filed suit against Liberty Holdings asserting an intentional tort claim for wrongful termination in violation of public policy. Berry alleged Liberty Holdings terminated his employment "because he engaged in the protected activity of bringing a claim for personal injury" against Premier.

In response, Liberty Holdings filed a motion to dismiss for failure to state a claim upon which relief could be granted. Liberty Holdings argued Berry failed to identify a clearly defined public policy that "protects an employee's right to file a civil lawsuit against someone other than his or her employer." Liberty Holdings also claimed Berry failed to plead all the ultimate facts necessary to support his wrongful termination claim because Berry failed to allege in his petition that Liberty Holdings terminated him in violation of a clearly defined public policy.

In his resistance to Liberty Holdings' motion to dismiss, Berry clarified that it is clearly public policy in Iowa "to protect people from termination when they bring actions pursuant to Iowa Code chapter 668 to seek redress for personal injuries caused by the negligence of

another." In response, Liberty Holdings again argued that Berry failed to allege in his petition that he had a statutory right to file a personal injury lawsuit, and even if so pled, this right would not have qualified as a clearly defined public policy.

The district court granted Liberty Holdings' motion to dismiss. Berry filed a notice of appeal and we transferred the case to the court of appeals. The court of appeals reversed the district court's ruling and remanded the case for further proceedings. Liberty Holdings filed an application for further review, which we granted.

**III. Discussion and Analysis.**

**A. The Intentional Tort of Wrongful Discharge.** Iowa is an at-will employment state. This means that, absent a valid contract of employment, "the employment relationship is terminable by either party 'at any time, for any reason, or no reason at all.' " *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 280 (Iowa 2000) (quoting *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 202 (Iowa 1997)). Nevertheless, we have adopted a narrow public-policy exception to the general rule of at-will employment. *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988). The public-policy exception to the at-will employment doctrine limits an employer's discretion to discharge an at-will employee when the discharge would undermine a clearly defined and well-recognized public policy of the state. *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 763 (Iowa 2009); *accord Thompto v. Coborn's Inc.*, 871 F. Supp. 1097, 1112–13 (N.D. Iowa 1994) (recognizing the public-policy exception is based on the theory "that the law should not allow employees to be fired for reasons that violate public policy"). Accordingly, an at-will employee has a cause of action for wrongful

discharge when the reasons for the discharge violate a clearly defined and well-recognized public policy. *Jasper*, 764 N.W.2d at 761.

To prevail on an intentional tort claim of wrongful discharge from employment in violation of public policy, an at-will employee must establish the following elements: (1) the existence of a clearly defined and well-recognized public policy that protects the employee's activity; (2) this public policy would be undermined by the employee's discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason the employer discharged the employee; and (4) the employer had no overriding business justification for the discharge. *Lloyd v. Drake Univ.*, 686 N.W.2d 225, 228 (Iowa 2004); *Davis v. Horton*, 661 N.W.2d 533, 535–36 (Iowa 2003). If the employee succeeds in establishing the claim, he or she is entitled to recover both personal injury and property damage. *Jasper*, 764 N.W.2d at 769–70.

**B. Presence of a Clearly Defined and Well-Recognized Public Policy.** For Berry to succeed on his claim of wrongful discharge, he must identify a clearly defined and well-recognized public policy that would be undermined by his termination from employment. *See Lloyd*, 686 N.W.2d at 229; *Fitzgerald*, 613 N.W.2d at 282. Berry identifies chapter 668, Iowa's comparative fault statute, which he claims serves as a source for the public policy of protecting employees from termination when they seek legal redress for personal injuries caused by the negligence of another. *See, e.g.*, *Jasper*, 764 N.W.2d at 762 (recognizing one category of cases where we have found a violation of public policy to support a wrongful discharge claim is where the employee is discharged for exercising a statutory right or privilege).

Though difficult to define, we have stated the concept of public policy "generally captures the communal conscience and common sense

of our state in matters of public health, safety, morals, and general welfare." *Id.* at 761; *accord Thompto*, 871 F. Supp. at 1117 (recognizing public policy consists of matters that are fundamental to citizens' social rights, duties, and responsibilities). Statutes are the main sources we have relied upon when identifying public policies to support a wrongful discharge claim. *Jasper*, 764 N.W.2d at 762; *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 685 (Iowa 2001). We have also recognized that our constitution and administrative regulations may serve as proper sources of public policy. *Jasper*, 764 N.W.2d at 763–64. Conversely, we have consistently refused to recognize the existence of alleged public policies based in general and vague concepts of socially desirable conduct, internal employment policies, or private interests. *Id.* at 762, 765; *Lloyd*, 686 N.W.2d at 230.

The statute relied upon must relate to the public health, safety, or welfare and embody a clearly defined and well-recognized public policy that protects the employee's activity. *Jasper*, 764 N.W.2d at 763–64; *see also Davis*, 661 N.W.2d at 536 (recognizing, when identifying public policy, "we proceed cautiously and will only extend such recognition to those policies that are well-recognized and clearly defined"). Stated another way, the source from which an employee seeks to derive a public policy "must affect a public interest so that the tort advances general social policies, not . . . individual interests." *Jasper*, 764 N.W.2d at 766.

Even if an employee identifies a statute as an alleged source of public policy, it does not necessarily follow that the statute supports a wrongful discharge claim. *Id.* at 765. We have recognized that

> "many statutes simply regulate conduct between private individuals, or impose requirements whose fulfillment does not implicate fundamental public policy concerns." The difficult task for courts is to determine which claims involve

> public policy and which claims involve private disputes between employers and employees governed by the at-will employment doctrine.

*Id.* (quoting *Foley v. Interactive Data Corp.*, 765 P.2d 373, 379 (Cal. 1988)).

In making this determination, we examine whether the claimed policy deals with a clear and well-recognized public interest, as opposed to mere individual interests. *Id.* Some statutes serve as fundamental sources of public policy by expressly protecting a specific employment activity from retaliation by the employer. *See, e.g., Tullis v. Merrill*, 584 N.W.2d 236, 239 (Iowa 1998) (finding a statute that expressly prohibited an employer from discharging an employee for filing a claim for wages to clearly articulate a public policy). Other statutes, although not containing express protections, may also be a source of public policy as long as they clearly imply the statute protects the specific employment activity in question from employer retaliation. *See, e.g., Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 300–01 (Iowa 1998) (finding the forceful language of the child-abuse reporting statute impliedly articulates a public policy); *Lara v. Thomas*, 512 N.W.2d 777, 782 (Iowa 1994) (finding a statute articulated a public policy such that an employer's retaliatory discharge conflicted with the statute's legislatively declared goals). Nevertheless, "legislative pronouncements that are limited in scope may not support a public policy beyond the specific scope of the statute." *Jasper*, 764 N.W.2d at 766 (recognizing courts cannot extend public-policy protection to areas the legislature has not chosen to protect statutorily).

With these authorities in mind, we must determine whether Iowa's comparative fault statute articulates a public policy that precludes Liberty Holdings from discharging Berry for exercising his right to file a

personal injury lawsuit against a company under common ownership with his employer.[1]

Prior to 1982, Iowa was a contributory negligence state. *See Goetzman v. Wichern*, 327 N.W.2d 742, 754 (Iowa 1982) (abandoning contributory negligence as a complete defense to a tort claim and adopting pure comparative negligence). In 1984 the legislature enacted Iowa's comparative fault statute, which codified a modified form of comparative fault. 1984 Iowa Acts ch. 1293, §§ 1–15 (codified at Iowa Code ch. 668); *accord Reilly v. Anderson*, 727 N.W.2d 102, 108 (Iowa 2006). The statute replaced the pure comparative negligence scheme we had previously adopted. *See Goetzman*, 327 N.W.2d at 754.

In its description of the statute, the legislature explained the statute's purpose related to "liability in tort by establishing comparative fault as the basis for liability in relation to claims for damages arising from injury to or death of a person or harm to property." 1984 Iowa Acts ch. 1293 (preamble). Accordingly, the statute requires the comparison of fault of potentially liable parties in cases of negligence, recklessness, and strict liability. *Jahn v. Hyundai Motor Co.*, 773 N.W.2d 550, 560 (Iowa 2009); *accord Bredberg v. Pepsico, Inc.*, 551 N.W.2d 321, 329 (Iowa 1996) (recognizing the comparative fault statute allows the fact finder to assign fault to one or more parties claimed to have contributed to the plaintiff's injuries).

---

[1]In addition to Iowa's comparative fault statute, the court of appeals relied on the Iowa Constitution and court precedent to hold Berry's right to seek judicial redress for a wrong is a clearly defined and well-recognized public policy supporting his wrongful discharge claim. However, at the district court and on appeal, Berry only identified Iowa's comparative fault statute as a source of public policy. Accordingly, the only claim preserved for our review is whether chapter 668 articulates a public policy to support Berry's claim. *See, e.g.*, *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (recognizing a claim must normally be both raised and decided by the district court before it is preserved for our review). Therefore, we will leave the question unanswered as to whether the Iowa Constitution, other statues, rules, or our court's precedent can be the basis for a public policy supporting Berry's wrongful discharge claim.

We have said, "Iowa's Comparative Fault Act represents a truly comprehensive and far-ranging modification and consolidation of Iowa tort law." *Reilly*, 727 N.W.2d at 108–09 (quoting *Johnson v. Junkmann*, 395 N.W.2d 862, 867 (Iowa 1986)) (internal quotation marks omitted). Chapter 668 did not create any new causes of action. Rather, it created a set of rules under which the parties will try all tort actions when the action involved "fault" as defined by the statute. *See* Iowa Code §§ 668.1–.16. Therefore, chapter 668 more closely resembles a statute that attempts to regulate private conduct and imposes requirements that do not implicate public policy concerns.

The legislature did not make a policy statement in chapter 668 that implicated the health, safety, morals, or general welfare of the citizens of this state. *Cf. Teachout*, 584 N.W.2d at 300–01; *Lara*, 512 N.W.2d at 782. The legislature also did not protect any specific activities that indicate the presence of an underlying public policy. *Cf. Teachout*, 584 N.W.2d at 300–01; *Lara*, 512 N.W.2d at 782; *Springer*, 429 N.W.2d at 560–61. Rather, by enacting chapter 668, the legislature simply created a framework whereby the fact finder is able to assign fault to one or more parties claimed to have contributed to a plaintiff's injuries in cases of negligence, recklessness, and strict liability.

Accordingly, we conclude chapter 668 does not articulate a clearly defined and well-recognized public policy protecting the filing of a personal injury lawsuit against an employer.

**IV. Disposition.**

We vacate the decision of the court of appeals and affirm the judgment of the district court because Iowa Code chapter 668, Iowa's comparative fault statute, does not contain a clearly defined and well-

recognized public policy of this state that would limit an employer's discretion to discharge an at-will employee.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Mansfield, J., who takes no part.