# In the Iowa Supreme Court

No. 23–0300

Submitted November 14, 2024—Filed December 13, 2024

**Ashley Lynn Koester,**

Appellant,

vs.

**Eyerly-Ball Community Mental Health Services,
Rebecca Parker,** and **Monica Van Horn,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, judge.

An employer seeks further review of a court of appeals decision reversing in part and affirming in part the dismissal of an employee's wrongful-termination claims. **Decision of Court of Appeals Vacated; District Court Judgment Affirmed.**

Mansfield, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Bruce H. Stoltze, Jr., (argued) and Breanne A. Gilpatrick (until withdrawal) of Stoltze Law Group, PLC, Des Moines, for appellant.

Ryan Stefani (argued), Frank B. Hardy, and Leslie Behaunek of Nyemaster Goode, P.C., Des Moines, for appellees.

**Mansfield, Justice.**

### I. Introduction.

Chapter 91A of the Iowa Code, "The Iowa Wage Payment Collection Law," provides remedies to employees who are owed wages by their employer for work performed. This case involves an employee who sued her former employer both under that statute and under the public policy embodied in that statute. According to her petition, she worked as a nonexempt employee and believed in good faith that she was entitled to overtime compensation. She filled out timesheets on that basis, the timesheets were approved by her supervisor, and her employer paid the overtime compensation. Later, though, her employer objected to what the employee had done and terminated the employee's employment.

We conclude, as did the district court, that these facts do not state a claim for relief. The employee does not have a claim either under chapter 91A directly or indirectly through the common law tort of wrongful discharge in violation of public policy. Chapter 91A is not a generalized fair practices law or an Iowa version of the Federal Fair Labor Standards Act; it is a wage collection law. Because the employee never had a claim for unpaid wages, she is not entitled to relief in her lawsuit. Therefore, we affirm the district court's order of dismissal and vacate the decision of the court of appeals that had reversed that order in part.

### II. Facts and Procedural History.

**A. Koester's Employment at Eyerly-Ball.** On July 22, 2019, Ashley Koester began working for Eyerly-Ball Community Health Services in Des Moines as a mobile crisis counselor. Koester was hired as a per diem nurse. This meant her hours varied. She would work intermittent shifts as the need arose.

Koester was a nonexempt employee and therefore eligible to receive overtime pay. *See* 29 U.S.C.A. § 213; *id.* § 207(a)(1). Her hourly rate varied depending on the type of work performed. Eyerly-Ball divided pay rates into three categories. There was a "dispatch rate" or "response rate" for time spent responding to crisis calls, including driving to and from the crisis location and documenting matters related to the call. There was an "administrative rate" for time spent in meetings and training. Finally, there was an "on call" rate of between $3 and $10 per hour for time spent being *available* to respond to potential dispatch calls. During her on-call time, Koester was expected to answer the phone within ten minutes, not carry weapons on her person or in her vehicle, not consume drugs or alcohol, and remain within a one-hour response time of the service area. Eyerly-Ball did not consider on-call time to be hours worked for purposes of benefits eligibility or overtime.

Koester used an Eyerly-Ball software program to sign up for on-call work shifts. Her supervisors regularly encouraged per diem nurses to sign up for more shifts, and Koester was approved for every shift she signed up for. Although Eyerly-Ball's employee handbook advised nonexempt employees that "[o]vertime work must be approved before it is performed," in practice Eyerly-Ball did not disapprove any shift that Koester signed up for.

During her time working for Eyerly-Ball, Koester at one point contacted the United States Department of Labor to ask if she should be receiving compensation for drive time to the office. Later, she contacted the Department of Labor regarding her on-call hours and was told that based on Eyerly-Ball's on-call requirements, those hours should count toward the forty-hour threshold for overtime pay.

Employees at Eyerly-Ball record their own hours on an electronic timesheet. After the employee signs off on their hours worked, the timesheet is forwarded to a supervisor for review and approval and then sent to Eyerly-Ball's human resource department to finalize payment. The time sheets where Koester claimed overtime were always approved and Koester "always received her overtime pay for the hours she worked."

**B. Eyerly-Ball's Termination of Koester's Employment.** After speaking with a coworker, Koester realized she was the only one being paid overtime based on on-call hours. One coworker told her that they weren't paid overtime for their holiday on-call hours but instead were paid $10 an hour—the hourly on-call rate for holidays as stated in the employee handbook. Following the discussion with Koester, the coworker informed other employees that Koester was receiving overtime pay but they were not.

At some point, Eyerly-Ball management discovered that Koester was being paid overtime. On January 7, 2020, about six months after Koester had been hired, she was called into a meeting with her supervisor, Monica Van Horn; the director of human resources, Rebecca Parker; and head supervisor, Krystina Engle. At the meeting, Parker asked Koester "if she was aware she was being overpaid." Koester responded that "she [had] called the Department of Labor and they said because her On-Call rate is so restrictive, the hours on-call are considered hours worked and are eligible for overtime."

Parker asked Koester why she did not come to them about this issue earlier. Koester answered that "she was afraid she would be terminated if she brought it up." Parker told Koester she "consider[ed] this to be stealing from the company and lacking integrity." According to Koester, "Parker then terminated [Koester] for receiving overtime payments." Koester also alleges that the

defendants "seemed to terminate [her] for discussing her wages with her coworkers and giving them the idea for additional wages as well."

**C. Koester's Lawsuit.** On June 2, 2022, roughly two and a half years after her termination, Koester filed an action in the Polk County District Court against Eyerly-Ball, Van Horn, and Parker. Initially, she included only a common law claim for wrongful discharge in violation of public policy. After the defendants moved to dismiss this claim, Koester amended her petition to add a statutory claim for wrongful termination and retaliation in violation of Iowa Code section 91A.10 (2022). The gist of both claims was that Koester was terminated for having asserted a right to receive overtime pay.

The defendants countered with a new motion to dismiss both claims. They argued that both the statutory and public policy claims failed because Koester had been paid in full, including for the overtime hours she had claimed. In addition, they argued that the section 91A.10 claim was time-barred under Iowa Code section 614.1(8), which provides a two-year statute of limitations for actions "founded on claims for wages or for a liability or penalty for failure to pay wages."

The district court granted the motion to dismiss as to both counts. It held that both the public policy claim and the statutory claim were foreclosed because Koester "did not demand wages" and "is not due any wages." The court reasoned that Koester "cannot recover under [section] 91A" and her public policy claim "is outside the scope of the intended public policy of [section] 91A." In addition, the district court found the statutory claim to be time-barred.

Koester appealed, and we transferred the case to the court of appeals. The court of appeals reversed in part and affirmed in part. The court of appeals affirmed the district court's ruling that the statutory claim was time-barred but

reversed the dismissal of the public policy claim, holding that the public policy behind chapter 91A was broad enough to encompass Koester's claim.

Eyerly-Ball applied for further review, which we granted.

### III. Standard of Review.

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Nahas v. Polk County*, 991 N.W.2d 770, 775 (Iowa 2023) (quoting *Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 298 (Iowa 2020)). In our review, "we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions." *Id.* (quoting *Benskin, Inc.*, 952 N.W.2d at 298).

### IV. Legal Analysis.

**A. Koester's Statutory Claim.** Iowa Code section 91A.8 gives employees a statutory cause of action against their employer for recovery of unpaid wages:

> When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

Meanwhile, section 91A.10(5) provides,

> An employer shall not discharge or in any other manner discriminate against any employee because the employee has filed a complaint, assigned a claim, or brought an action under this section or has cooperated in bringing any action against an employer. Any employee may file a complaint with the commissioner alleging discharge or discrimination within thirty days after such violation occurs. Upon receipt of the complaint, the commissioner shall cause an investigation to be made to the extent deemed appropriate. If the commissioner determines from the investigation that the provisions of this subsection have been violated, the commissioner shall bring an action in the appropriate district court against such person. The

district court shall have jurisdiction, for cause shown, to restrain violations of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to the former position with back pay.

Koester does not allege that Eyerly-Ball owes her any unpaid wages. Rather, her claim is for "wrongful termination and retaliation under Iowa Code § 91A et seq." We assume, without deciding, that a private right of action exists under section 91A.10. Nonetheless, we agree with the district court that the claim should be dismissed because Koester does not allege she engaged in conduct covered by section 91A.10(5).

Section 91A.10(5) is triggered when an employee is fired or subjected to discrimination for filing a complaint, assigning a claim, or bringing an action under section 91A.10. Koester did none of those things before being terminated by Eyerly-Ball. Instead, Koester's petition states that she was fired for receiving overtime payments based on the timesheets she submitted and, perhaps, for discussing her wages with her coworkers and giving them the idea for additional wages. That is not enough. Submitting a timesheet is not "fil[ing] a complaint."[1]

**B. Koester's Common Law Claim of Wrongful Termination in Violation of Public Policy.** To succeed in her wrongful termination in violation of public policy claim, Koester must prove four elements:

> (1) the existence of a clearly defined and well-recognized public policy that protects the employee's activity; (2) this public policy would be undermined by the employee's discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason the employer discharged the employee;

---

[1]Koester cites *Kent v. Muscatine, N. & S. Railway Co.*, 88 N.W. 935, 935 (Iowa 1902), arguing that the time checks given to the laborers in that case were deemed a demand for wages due. This argument misses the mark. The time checks given to the laborers by the foreman represented proof of their hours worked. *See id.* Their demand for wages occurred after the subcontractor absconded without paying the workers and the railroad was subsequently sued directly for payment due. *See id.* at 935–36.

and (4) the employer had no overriding business justification for the discharge.

*Carver-Kimm v. Reynolds*, 992 N.W.2d 591, 598 (Iowa 2023) (quoting *Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 109–10 (Iowa 2011)). "The first two elements involve questions of law for the court to decide." *Id.*

Our analysis begins with step one, identifying the existence of "a clearly defined and well-recognized public policy." *Dorshkind v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 303 (Iowa 2013). "Public policy is an elusive legal construct . . . . [It] is that which 'generally captures the communal conscience and common sense of our state in matters of public health, safety, morals, and general welfare.' " *Id.* at 300 (quoting *Berry*, 803 N.W.2d at 110). However, "[w]e have consistently refused to recognize the existence of alleged public policies based in general and vague concepts of socially desirable conduct, internal employment policies, or private interests." *Nahas*, 991 N.W.2d at 782 (quoting *Berry*, 803 N.W.2d at 110). "We have said that the tort provides a remedy for conduct that violates public policy established in a statute." *Carver-Kimm*, 992 N.W.2d at 598. "Statutes are the main sources we have relied upon when identifying public policies to support a wrongful discharge claim." *Berry*, 803 N.W.2d at 110. Administrative regulations can also be a source of public policy to support the tort of wrongful discharge. *See Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 764 (Iowa 2009). This is based on the notion that the legislature has delegated its authority to the administrative agency and the regulations are consistent with the underlying statute. *See id.* at 763–64. In addition, we have recognized that the Iowa Constitution can be a source of public policy. *See, e.g., Ferguson v. Exide Technologies, Inc.*, 936 N.W.2d 429, 432 (Iowa 2019) (per curiam).

We have repeatedly emphasized the "narrow" scope of the wrongful-discharge-in-violation-of-public-policy tort. *See, e.g., Carver-Kimm*, 992 N.W.2d at 602; *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 143 (Iowa 2013); *Ballalatak v. All Iowa Agric. Ass'n*, 781 N.W.2d 272, 275 (Iowa 2010). The cause of action is a "narrow public-policy exception to the general rule of at-will employment." *Berry*, 803 N.W.2d at 109. Under the employment-at-will doctrine, "unless a contract states otherwise, generally the employee or the employer may end the employment 'at any time, for any reason, or no reason at all.' " *Carver-Kimm*, 992 N.W.2d at 598 (quoting *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 280 (Iowa 2000) (en banc)).

We have previously staked out three areas where the public-policy wrongful-discharge common law tort may be available: (1) enforcing a statutory right, (2) refusing to participate in illegal activity, and (3) whistleblowing. *See Dorshkind*, 835 N.W.2d at 300–02. An employee who is doing one of these three things may be engaged in protected activity.

1. *Enforcing a statutory right.* Under the "enforcing a statutory right" category, we have upheld public-policy wrongful-discharge claims brought by employees who lost their jobs because they filed for statutorily protected benefits such as workers' compensation and unemployment insurance benefits. *See, e.g., Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 559–60 (Iowa 1988) (en banc) (involving an employee who was terminated for filing a workers' compensation claim); *Lara v. Thomas*, 512 N.W.2d 777, 782 (Iowa 1994) (involving an employee who was terminated for filing for unemployment benefits). We noted that an employer's retaliatory discharge in each case would conflict with "legislatively declared goals" in each statute. *Lara*, 512 N.W.2d at 782; *see also* Iowa Code § 85.18; *id.* § 96.15(1).

Along the same lines, in *Tullis v. Merrill,* we affirmed a jury verdict in favor of an employee who was terminated "for asserting a right to reimbursement for sums wrongfully withheld from his paycheck." 584 N.W.2d 236, 237–38 (Iowa 1998). The case involved health insurance premiums that were being deducted from the employee's paycheck contrary to the parties' agreement. *Id.* at 239. We reviewed the definition of "wages" in Iowa Code chapter 91A and determined that the improper withholdings fell within the definition. *See id.* Moreover, section 91A.10(5) prohibits the discharge of an employee because the employee "has filed a complaint" under that section. *Id.* We concluded that "Tullis's formal letter to Merrill constituted a complaint related to unpaid wages for purposes of applying section 91A.10(5)" and that "Iowa Code chapter 91A plainly articulates a public policy prohibiting the firing of an employee in response to a demand for wages due under an agreement with the employer." *Id.* at 239–40. Because the employee was terminated for making a claim for reimbursement for sums wrongfully withheld from his paycheck, we determined that his public-policy claim was properly submitted to the jury. *Id.* at 239.

Koester analogizes this case to *Tullis.* She says that she was terminated because she sought to be paid overtime to the extent her "on call" hours exceeded forty per week. But this case is different because Koester doesn't allege that any of those hours were unpaid. She alleges, rather, that the defendants terminated her employment because they *disagreed with her legal position* as to her proper rate of compensation.

This critical fact alters the analysis in our view. Employers and individual employees have disagreements over terms and conditions of employment all the time. Absent unlawful discrimination or a collective bargaining relationship, either side is generally entitled to end the relationship rather than continue the

disagreement. Any other view would force the employer to maintain a relationship on the employee's desired terms until it obtained a judicial declaration that its view of the law was correct and the employee's was wrong. *Tullis* is distinguishable because the employer terminated the employee for claiming unpaid wages, which was statutorily protected activity under section 91A.10. *Id.* at 238–39. Koester wasn't discharged for engaging in statutorily protected activity, such as claiming unpaid wages, filing an unemployment claim, or filing a workers' compensation claim. She was fired because of an ongoing dispute with her employer over compensation rates.[2]

Iowa Code section 91A.10(5) specifically protects an employee from discrimination who "has filed a complaint, assigned a claim, or brought an action under this section." But claims "under this section" involve "wages [that] have not been paid." *See id.* § 91A.10(1). Koester has not asserted such a claim.

Our decision in *McClure v. International Livestock Improvement Services Corp.*, 369 N.W.2d 801 (Iowa 1985), bolsters our conclusion. In that case, an employee had a contract to be paid $2,500 monthly by his employer that required thirty days' notice for termination. *Id.* at 802. When the employee was terminated without notice, he brought a claim for one month's pay plus liquidated damages and attorney fees under chapter 91A. *Id.* at 802–03. Reversing the district court, we held that chapter 91A did not apply. *Id.* at 804. We observed, "The general tenor of the chapter is the regulation of the payment of wages which have been earned." *Id.* at 803. We noted that the definition of "wages" in section 91A.2 "does not speak in the future tense." *Id.* at 804. We emphasized that the employee's

---

[2]Koester's attorney explained at oral argument that Koester's tort claim does *not* require her to prove that she was legally entitled to be paid at the overtime rate. Rather, she need only prove that she had a good-faith belief she was entitled to that rate. *See Dorshkind*, 835 N.W.2d at 309 (Cady, C.J., concurring specially) ("The tort does not protect employees who lodge internal complaints over legitimate business practices by employers.").

claim was "not for services 'rendered' " and therefore could not be pursued under chapter 91A. *Id.* Here too, Koester does not allege any dissatisfaction with what she was paid before she was terminated, nor does she allege that she expressed such dissatisfaction to Eyerly-Ball.[3]

"The legislature is the branch of government responsible for advancing public policy," and "we have consistently rejected claims of wrongful discharge based on public policy when the public policy asserted by an employee was not derived from a statute." *Jasper*, 764 N.W.2d at 762–63. "The use of statutes as a source of public policy also helps provide the essential notice to employers and employees of conduct that can lead to dismissal, as well as conduct that can lead to tort liability." *Id.* at 763.

Koester asks us in effect to *expand* on the legislature's declaration of protected activity. Yet we have acknowledged our own "reluctance to search too far beyond our legislative pronouncements and constitution to find public policy to support an action." *Fitzgerald*, 613 N.W.2d at 283. Eyerly-Ball would have been on notice from the provisions of chapter 91A that withholding wages or retaliating against employees who were pursuing unpaid wage claims would have legal consequences. *See Jasper*, 764 N.W.2d at 763. But it would not have had

---

[3]*Tullis* quoted and relied in part on a regulation which states,

> The statutory principles of the [wage payment act] would be seriously undermined if employees were discouraged from lodging complaints about wages with their employers. A complaint to the employer made in good faith would be related to the Act, and an employee would be protected against discharge or discrimination caused by the complaint to the employer.

(Alteration in original); *see Tullis*, 584 N.W.2d at 239–40 (quoting Iowa Admin. Code r. 347—36.6(2) (now Iowa Admin. Code r. 875—36.6(2))). Yet even if this regulation could broaden the scope of the underlying statute, it is still tied to the concept of "wages," and specifically "complaints about wages." *Id.* (quoting Iowa Admin. Code r. 347—36.6(2) (now Iowa Admin. Code r. 875—36.6(2))). In chapter 91A, "wages" is a term of art that "means compensation owed by an employer for . . . services previously rendered." Iowa Code § 91A.2(7)(*a*); *see McClure*, 369 N.W.2d at 804.

notice that terminating an employee over a disagreement about wage rates—while paying the employee all the wages she had claimed—would engender tort liability. A public-policy wrongful-discharge claim cannot be sustained on the "enforcing a statutory right" theory.[4]

2. *Refusing to participate in illegal activity.* Additionally, this case does not involve Koester's refusal to participate in illegal activity. Koester does not allege that Eyerly-Ball tried to keep her from performing her job as the law required—for example, by preventing her from producing duly requested public records, interfering with her giving testimony about her work, or forcing her to take care of more children than the law allowed. *Cf. Carver-Kimm,* 992 N.W.2d at 602 (involving an employee who allegedly was terminated for carrying out her mandatory legal duty to produce records responsive to an open-records request); *Fitzgerald,* 613 N.W.2d at 285–86 (involving an employee who was terminated because he intended to testify truthfully in a legal proceeding); *Jasper v. H. Nizam, Inc.,* 764 N.W.2d at 758–59 (involving an employee who was terminated because she refused to work in an illegally understaffed room at a daycare center). Koester's claim, rather, is that Eyerly-Ball did not want to pay her in the future at the rate she contended was due.

3. *Whistleblowing.* Nor has Koester alleged that she was terminated for engaging in protected whistleblowing. A typical whistleblower case is *George v. D.W. Zinser Co.,* 762 N.W.2d 865 (Iowa 2009). An employee was fired allegedly for reporting his employer's safety violations to the Iowa Division of Labor

---

[4]The court of appeals reasoned that Koester was making a "claim" for wages due whenever she submitted her timesheets. It characterized the distinction between the employee's actual demand for wages wrongfully withheld in *Tullis* and Koester's submission of completed timesheets as "hyper-focus on statutory minutiae." We respectfully disagree. A report of hours worked is not equivalent to a demand for unpaid wages. In our view, a layperson would readily understand the difference; it is not in the realm of minutiae.

Services Occupational Safety and Health Bureau. *Id.* at 866. Iowa law specifically prohibits discharging an employee for filing such a complaint. *See id.* at 871–72 (quoting Iowa Code § 88.9(3)). We held that a common law wrongful-discharge case could go forward. *Id.* at 872.

We have on two occasions recognized public-policy wrongful-discharge claims based on internal reporting. In *Teachout v. Forest City Community School District*, we decided that a teacher could pursue such a claim when she was terminated for reporting what she observed to be child abuse. 584 N.W.2d 296, 300–01 (Iowa 1998). We emphasized that Iowa law mandated reporting suspected child abuse to the department of human services (DHS) (now the department of health and human services). The teacher had made the report to the school principal, and the school knew that she intended to report the abuse to DHS when she was terminated. *See id.* at 298–99. Thus, *Teachout* was a case where the employee intended to report the matter externally and was terminated before she could do so.

Likewise, in *Dorshkind v. Oak Park Place of Dubuque II, LLC*, we upheld a jury verdict in a public-policy wrongful-discharge whistleblowing case involving only internal reporting. 835 N.W.2d at 295. An employee of an assisted living center witnessed her supervisor and another employee falsifying training records during a department of inspections and appeals (DIA) inspection. *Id.* at 296–97. She reported this to her former supervisor, who took the matter up to higher management, and she was fired for doing so. *Id.* at 297–98. Later, the DIA determined the documents had been forged, imposed a civil penalty of $10,000, and barred the facility from admitting any new patients while under conditional certification status. *Id.* at 298–99.

Iowa law protects complaints filed with the DIA. *See id.* at 316 (Mansfield, J., concurring in part and dissenting in part); *see also* Iowa Code §§ 231C.7(1), .13. Although the plaintiff had reported the matter internally rather than externally to the DIA, we emphasized that the case before us involved "reporting violations of law that jeopardized the health, safety, and welfare of dementia patients in an assisted living facility." *Id.* at 305–06 (majority opinion).

Koester's case does not involve even internal reporting. Koester alleges, rather, that her superiors discovered she was getting paid overtime and that they objected vehemently. *Ballalatak v. All Iowa Agricultural Ass'n*, 781 N.W.2d 272, is closer to the present situation than either *Teachout* or *Dorshkind*. There, an employee was fired allegedly for relaying concerns with his employer about its handling of two coemployees' workers' compensation claims. *Id.* at 274–75. We described the legal issue as follows: "[W]e must determine whether Iowa public policy protects supervisors or coemployees who inquire about their employer's compliance with the workers' compensation laws as they relate to those they supervise or to their coemployees." *Id.* at 276. We decided it didn't. *Id.* at 278. If Koester had alleged she was fired for raising concerns with her bosses that they had not paid overtime to her coworkers, this might be a *Ballalatak*-type case. And *Ballalatak* indicates that would not be enough. *Id.* Koester, however, only alleges she was terminated for having received overtime herself and, perhaps, for having discussed her own wages with her coworkers and giving them the idea for additional wages.[5] We conclude that Koester has not engaged in protected whistleblowing activity that could serve as the basis for a public-policy wrongful-discharge claim.

---

[5]Koester does not claim that discussing her overtime pay with coworkers amounted to protected whistleblowing. In engaging in this conduct, she was not making a report either to the labor commissioner or to her employer.

Koester argues that it would discourage employees from seeking overtime pay to which they were entitled if the only employee who had sought and obtained such pay could be fired without repercussions. As the court of appeals put it, "Chapter 91A is a clearly defined and well-recognized public policy that protected Koester's demands for overtime pay, and that policy would be undermined if she could lose her job for successfully making those demands." But this assumes that there exists a clearly defined and well-recognized public policy in the first place. Whether that policy has been undermined is step two in the analysis. *See Carver-Kimm*, 992 N.W.2d at 598.

As we have discussed, the policy here is to protect employees from being stiffed by employers for unpaid wages, not to shield disagreements over compensation rates. Iowa Code chapter 91A is self-styled the "Iowa Wage Payment Collection Law." Iowa Code § 91A.1. It is a law about collecting wages. Notably, the Federal Labor Standards Act, not cited or relied upon by Koester, makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3).

4. *Motion to dismiss standard.* Koester also emphasizes that the district court granted a motion to dismiss, and she cites precedents against granting such motions. *See, e.g., U.S. Bank v. Barbour*, 770 N.W.2d 350, 354 (Iowa 2009); *Smith v. Smith*, 513 N.W.2d 728, 730 (Iowa 1994). But whether a clearly defined and well-recognized public policy exists is a question of law for the court to decide. *See Carver-Kimm v. Reynolds*, 992 N.W.2d at 598. When that question is decided adversely to the plaintiff, a dismissal may be appropriate. *See Berry*, 803 N.W.2d at 112 (affirming dismissal because Iowa law did not articulate a

clearly defined and well-recognized public policy protecting the employee's conduct).

### V. Conclusion.

For the foregoing reasons, we vacate the decision of the court of appeals and affirm the district court's order and judgment dismissing Koester's claims.

**Decision of Court of Appeals Vacated; District Court Judgment Affirmed.**

All justices concur except May, J., who takes no part.