NELLIE FLUES, Appellee, v. THE NEW NONPAREIL COMPANY, Appellant.

**Libel:** WORDS ACTIONABLE *per se*. The publication of the charge in a wife's petition for divorce that her husband had been intimate with the plaintiff is libelous *per se* under the statute, if libelous at all, because imputing unchastity; although not in terms charging plaintiff with the commission of a crime.

**Same:** PRIVILEGE. The fair and impartial publication of judicial proceedings is privileged if done in good faith and solely for public information; but if the publication is malicious the privilege fails.

**Same:** INSTRUCTIONS: PREJUDICE. Where the petition for libel did not charge a publication prior to the issuance of the newspaper, and it appeared that the time the paper went to press was very close to the time at which judical action was taken, an instruction that the publication was not privileged if judical action was not had before the paper "went to press" was prejudicial to defendant.

**Same:** PRIVILEGED COMMUNICATIONS. The rule of privilege applies to the publication of *ex parte* proceedings before a magistrate, application for criminal information, and everything occuring publicly in open court, provided the published report is fair and accurate; even though no record is kept of the proceedings.

**Same:** MALICE. A fair and accurate report of judicial proceedings is privileged unless actuated by malice; and where the publication contains no extravagant denunciation or vituperation malice can not be found from the mere publication itself.

*Appeal from the Pottawattamie District Court.*—HON. W. R. GREENE, Judge.

WEDNESDAY, MAY 8, 1912.

ACTION for damages for alleged libel by the publication of two libelous articles concerning the plaintiff. The defendant admitted the publications, and pleaded that the articles complained of were fair and accurate reports of judicial proceedings, and were therefore privileged, and pleaded further that the matters published were in fact true.   There was a verdict for the plaintiff, and the defendant has appealed.   *Reversed.*

*Saunders & Stewart* and *John N. Hughes*, for appellant.

*Thomas Q. Harrison*, for appellee.

EVANS, J.—The petition was in two counts. The first count charged the publication, on June 25, 1910, of the following.

### Laura Walton Asks  Divorce.

Charges Cruel and Inhuman Treatment and Unfaithfulness.
A petition for a divorce has been filed in the district court by Laura Walton against B. F. Walton.   The plaintiff alleges cruel and inhuman treatment, drunkenness and non-support as grounds for the action.   The statement is also made that the defendant has been intimate with a woman named Nellie Flues and that the defendant spends much of his time with her.   The plaintiff prays for the custody of the two children born of her marriage with the defendant, and for permanent alimony in the sum of twelve dollars a week.

In the second count, the plaintiff charged the defendant with the publication, on June 24, 1910, of the following:

### The Neighbors Were Not Able to Sleep.

Hence B. F. Walton and Nellie Flues were arrested.
Using too much scattered language.  B. F. Walton, alias

John Doe, and Nellie Flues were in police court this morning, charged with disturbing the peace at the Walton residence, Twenty-Eighth street and Broadway, late last night. According to neighbors and other inmates of the house, the two were using obscene language and otherwise making the night suitable for anything but sleep. The case was continued until June 25, 1910.

The defendant is a corporation, engaged in publishing a daily newspaper. Both of the articles complained of were written by its regular reporters and purported to be a report of judicial proceedings.

The circumstances which resulted in judicial proceedings, and which involved the plaintiff and the Waltons (husband and wife), had their origin on and prior to the evening of June 23, 1910. The plaintiff and Mrs. Walton are sisters, and occupied separate apartments in a double house. On the night of June 23, 1910, Mrs. Walton caused her husband and Mrs. Flues, the plaintiff, to be arrested as for disturbing the peace. The next morning Mrs. Walton and her daughter appeared in police court against the arrested parties, and both testified to the events of the evening before upon the interrogation of the police judge. Thereupon the proceeding was continued to a later date. The general nature of Mrs. Walton's charges against her husband and sister is sufficiently indicated by the following quotations from her testimony upon the trial of the present case:

I remember the night of June 23, 1910. On that night, I had the plaintiff arrested for calling me names. The difficulty occurred between ten and eleven. My husband was in company with Mrs. Flues at that time. They were sitting on the back porch, and slurring me and calling me names. She called me a d——d wh——re and d——d bitch. That was in the presence of my husband, and my little daughter. Mrs. Flues and my husband had been together ever since he had his supper, about six o'clock. After supper, he went into her house. He stayed there in

her house from the time he had supper until half past eight or nine. Then they came out on the back porch. They had certainly been drinking, and they sat there from nine until I called the police. Every time they would be drinking, and I would go where they could see me, they would say something and call me names. They were drinking on the porch. She pulled the top off a beer bottle and threw it at my daughter and myself. After they had called me names and said those things to me, I phoned for the police. They came down and took my husband first. After they took him, she came to the back door and said to my daughter: 'Where is your mother? You d——d wh——re, come out, and I will cut your head off.' Then I sent my daughter to the phone, and she called the police, and they came down and took her.

This testimony is fully corroborated by the daughter and by five or six other witnesses, including the policemen and one neighbor. On June 25th she began an action for divorce against her husband. Her petition therefor was first presented by her counsel to Judge Wheeler for an order of allowance of temporary alimony and for an injunction. At the time of this application, counsel for both sides appeared. This appearance before Judge Wheeler appears to have been treated by both sides in the case at bar as the beginning of judicial proceedings in relation to such divorce; and we will so treat it for the purpose of this appeal. At this time, Judge Wheeler ordered temporary alimony and a writ of injunction, and indorsed such order on the back of the petition. It will be observed that the publication complained of in the first count of the petition relates to the divorce proceedings commenced on June 25th; and that complained of in the second count of the petition relates to the police court proceedings had on June 24th.

I. We will give our first attention to the first count. The trial court charged the jury that the publication complained of was libelous *per se,* if libelous at all. It is

urged by the appellant that this was a question for the
jury, and not for the court.   In support of
this contention, considerable stress is laid
by the appellant on the case of *Arnold v. Lutz.* 141 Iowa, 597,
wherein it was held that the trial court properly sub-
mitted to the jury the question whether the word "intimate"
had been spoken by the defendant in that case in a de-
famatory sense.   Counsel lose sight of the fact that that
was a case of slander, and not of libel.   Words are often
deemed libelous *per se* when written, which would not
necessarily be slanderous when spoken.   In this state, we
have a statutory definition for libel, viz.: "A libel is the
malicious defamation of a person, made public by any
printing, writing, sign, picture, representation or effigy,
tending to provoke him to wrath or expose him to public
hatred, contempt or ridicule, or to deprive him of the
benefits of public confidence and social intercourse. . . ."
Code, section 5086.   The publication complained of comes
so clearly within this definition of libel that it is needless
to discuss it.

1. LIBEL: words actionable *per se.*

A charge of "intimacy" with the defendant in a
divorce suit, as ground for divorce, can have no other pur-
pose than to impute unchastity, both to the defendant and
to the co-respondent.   Upon no fair construction could it be
said that such a charge did not tend to expose the plaintiff
herein to contempt, and to deprive her of the benefits of
public confidence and social intercourse.   *Morse v. Print-
ing Co.,* 124 Iowa, 707; *Charleston v. Russell,* 144 Iowa,
38.   In order to constitute a libel *per se,* it is not always
necessary to charge the commission of a crime, or even
the unchastity of a woman, as in cases of slander *per se.*
We hold, therefore, that the trial court properly instructed
the jury that the publication complained of was libelous
*per se,* if at all.

II.   The defendant pleaded that the publication was
privileged in that it was a fair and accurate report of

judicial proceedings.   Some questions are presented to us
relating to this defense.   It is the law that
public judicial proceedings furnish an occa-
sion of privilege.   The publication of fair and impartial
reports of such proceedings is privileged, unless (1) the
court where such proceedings are had has prohibited the
publication of the same, or (2) the subject-matter of the
trial be unfit for publication.   Odgers on Libel, page 243.
The privilege of such publication, however, is always
qualified, in this: That the report must be fair and im-
partial and without malice.   If it appears that the pub-
lication complained of was a fair and impartial report of
judicial proceedings, then malice is not implied in law,
even though the published matter were otherwise libelous
*per se;* and the additional burden is then laid upon the
plaintiff to prove actual malice.   If actual malice be proved,
then the privilege is lost and the defendant is liable for
the publication, notwithstanding that the occasion itself
was privileged.   To put it in another way, judicial pro-
ceedings furnish an occasion of privilege.   To this occa-
sion attaches the qualified privilege to publish a fair and
impartial report of such proceedings.   Such privilege is
qualified in the sense that such publication, even though
fair and impartial in its report, must be made in good
faith and solely for public information, and without actual
malice.   Actual malice being shown, the privilege fails.
Odgers on Libel, pages 256, 257.

Turning to the record herein, it was the contention
of the plaintiff in the trial below that the publication
complained of was made before any judicial proceedings
were instituted, and that there was therefore
no privilege in such publication.   This was
one of the questions submitted to the jury.
Upon this question, the trial court, in its third instruction,
instructed as follows: "If the order made by Judge
Wheeler in the Walton case was made prior to the time the

2. SAME: privilege.

3. SAME: instructions: prejudice.

newspaper in which it was published went to press, then the defendant had the privilege to publish the statements contained in the petition upon which it was based, providing it sets the same forth in a full and fair manner; and no liability would attach to its publication, unless plaintiff has shown that it was done with express malice, as hereinafter defined." In instruction 4, also, the trial court instructed as follows: "If defendant has shown by a preponderance of the evidence that said order was made before the paper went to press. . . ."

Appellant complains because the trial court, in these instructions, fixed the time of publication as being the point of time when the paper "went to press." It is urged by appellee that this was a mere inadvertence of speech, and that it could not have been understood otherwise than as referring to the time of issue or the publishing of the paper. It is also urged by the appellee that the publication was as a matter of law, complete when the paper "went to press," because the libelous matter must have been seen by some one in connection with such process. The use of language complained of was probably an inadvertence of speech. It was much emphasized by a special interrogatory, wherein the same language was used. In response to such interrogatory, the jury returned a special finding that the order of Judge Wheeler was not "made before the newspaper in which the article was published went to press." The language here quoted is contained in the special interrogatory. The evidence upon which this finding is based varied somewhat as to the point of time involved. It is made to appear that the issue of the paper, wherein the publication appeared went to press from 3:30 to 4:30 p. m. and that nothing was taken from the reporters after 3:45. The attorney for plaintiff testified that the order of Judge Wheeler was made about "4 o'clock or after." The attorney for the plaintiff in the divorce case estimated the time somewhat earlier as "around 1 or 2

o'clock." If the language of the trial court thus complained of was erroneous, it is manifest that it must have been prejudicial; the events under consideration following each other so closely in point of time. We need not consider the question whether there might be complete publication of the libel at the time of sending the paper to press, because the pleadings in the case will justify no such contention. The petition specifically charged the publication to have been made "in the morning issue of said paper." There is no claim in the petition that there was any publication prior to the issue; nor is there any evidence on the question whether any person read the article before it "went to press." We think, therefore, that the learned trial court inadvertently erred at this point, and that prejudice necessarily resulted thereby to the defendant. As an issue of fact is apparent at this point, which must be determined by the jury, we will not deal with the question as to whether there was sufficient evidence of actual malice to go to the jury. There may be additional evidence upon a second trial. If the jury should find that the article complained of was published in advance of any judicial proceedings, then, of course, there was no privilege, and actual malice need not be proved. Whether notwithstanding the absence of privilege, the close succession of events could be considered in mitigation is not involved; there being no plea of mitigation.

III. Turning now to the second count of the petition, the defendant in the court below moved for a directed verdict upon that count. It is undisputed that there were judicial proceedings before the police judge on the morning of June 24th. Mrs. Walton and her daughter did testify before the police court. This is made to appear by the testimony of several witnesses, including the police judge and his clerk. The plaintiff herein was present at that time. She has testified in her own behalf in this case;

4. SAME: privileged communications.

but she has made no denial of any of the testimony as to the proceedings had in the police court on that date. The rule of privilege under consideration applies to *"ex parte proceedings before the magistrates"* and to "applications for criminal information," and to "everything that occurs publicly in the open court, provided only that the reports are fair and accurate." Odgers on Libel, pages 246, 247; *Wason v. Walter*, L. R. 4 Q. B. 93.

It is urged by appellee that there was no legal record kept of these proceedings; but such omission can not affect the character of the occasion as one of privilege. It must be said, therefore, that it is conclusively established, and without dispute, that the occasion was one of privilege as a matter of law. *Morse v. Times Republican*, 124 Iowa, 707; *Bodine v. Times Journal Publishing Co.*, 26 Okl. 135 (110 Pac. 1096, 31 L. R. A. (N. S.) 147).

By the same rule, we think it must be said, also, that the publication was a fair and accurate report of matters testified to in such judicial proceedings. The publication was therefore qualifiedly privileged as a

**5. SAME: malice.** matter of law. There was no liability for its publication, unless actual malice be proved. We are able to find in the record no evidence tending in any degree to show actual malice in the publication. Such evidence may sometimes be found in the contents of the published matter. This is particularly so when the report is extravagant in denunciation or vituperative in character. But, unless the report disclose some such characteristic, malice can not be found from the mere publication alone. *Cherry v. Des Moines Leader*, 114 Iowa, 298; Newell on Libel and Slander, 324; *Bearce v. Bass*, 88 Me. 521 (34 Atl. 411, 51 Am. St. Rep. 446).

It is our conclusion, therefore, that upon the record before it the learned trial court ought to have withdrawn count 2 from the jury.

Other questions are presented and argued; but they

are of such a nature that they are not likely to arise upon another trial.

For the reasons indicated, the judgment entered below must be, and it is, *reversed.*