# IN THE COURT OF APPEALS OF IOWA

No. 23-1220
Filed October 30, 2024

**AMIE VILLARINI,**
　　　　Plaintiff-Appellant/Cross-Appellee,

**vs.**

**IOWA CITY COMMUNITY SCHOOL DISTRICT,**
　　　　Defendant-Appellee/Cross-Appellant.
_____

　　　　Appeal from the Iowa District Court for Johnson County, Andrew Chappell, Judge.

　　　　A former high school tennis coach appeals a summary judgment ruling dismissing her defamation and wrongful-discharge claims against a school district and the school district cross-appeals the denial of its motion to amend its answer. **AFFIRMED ON APPEAL AND CROSS-APPEAL.**

　　　　James K. Weston II of Tom Riley Law Firm, Iowa City, for appellant/cross-appellee.

　　　　Erek P. Sittig, Crystal K. Raiber, and Hayley Masching of Phelan Tucker Law LLP, Iowa City, for appellee/cross-appellant.

　　　　Heard by Greer, P.J., Langholz, J., and Doyle, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**LANGHOLZ, Judge.**

The Iowa City Community School District has chosen to expand public access to its school board meetings by posting complete video recordings of the meetings online. That decision led to this defamation suit by its former girls tennis coach, Amie Villarini. She claims that the school district defamed her by posting the video of a meeting during which two student tennis players made purportedly defamatory statements about her. And she alleges that placing her on administrative leave and not renewing her contract violates public policy.

The district court granted summary judgment for the school district, dismissing Villarini's defamation claim because the school district's republication of any defamatory statements made during the board meeting fell within the fair-report privilege. It also dismissed the coach's "breach of contract/violation of public policy" claim, holding the coach failed to identify a clearly defined public policy. Villarini appeals both rulings. And the school district cross-appeals the court's denial of leave to amend its answer to assert a qualified-immunity defense.

We agree that the fair-report privilege shields the school district from liability. The privilege covers those who fairly and accurately relay statements made during open, official proceedings. The video did just that. And Villarini's arguments—that the privilege has not been recognized in Iowa or only applies to the news media—lack merit. So the defamation claim was properly dismissed and the school district's request to add another affirmative defense was correctly denied as moot. As for the other claim, Villarini indeed offers no concrete public policy. Nor did she preserve error on a separate breach-of-contract claim. And so, the court did not error in granting judgment on this claim too.

## I.      Factual Background and Proceedings

Villarini was the longtime coach of the West High School girls' varsity tennis team.  She did not teach at the school, instead coaching the team under a series of one-year contracts with the school district.  *See* Iowa Code § 279.19A(1) (2022) (requiring certain extracurricular coaching contracts be limited to one school year).

After the 2021 season, four players complained that Villarini inappropriately touched them and raised other grievances about her coaching.  The school district investigated and later issued a report concluding that while Villarini indeed made physical contact with students—touching one student under her bra straps, another on her bare back, and rubbing sunscreen onto other players' legs and thighs—the conduct did not amount to "indecent contact" under the school district's policy.  The report advised Villarini "[t]o protect herself from future allegations" by "refrain[ing] from touching players as much as reasonably possible."  And the report further found that the students' other grievances did not rise to the level of bullying or harassment under the policy.  Frustrated by the investigation's outcome, two students escalated their complaints to the school board.

The school district is run by a board of directors—the school board—that holds regular meetings that are open to the public.  *See* generally Iowa Code ch. 279.  The school district's policies require the board to allocate time during each regular meeting to receive comments from the public.  During a public-comment period, a speaker may address the board for up to four minutes, with up to sixty minutes of public comments per meeting.  This segment is solely a way for members of the public to be heard—the board will not act on or discuss any issue raised by the public during that same meeting.

On April 12, 2022, the two students attended a public school board meeting and addressed the board during the designated public-comment period.[1]  The first student recounted being "touched inappropriately" by her tennis coach[2]—detailing instances of being touched on her bare back, leg, and upper thigh without consent—and her dismay at the investigation's findings.  Indeed, the first student believed the school district's investigation was geared toward protecting the coach from complaints, rather than protecting students from unwanted touching.  The first student also asserted her coach lied to, retaliated against, and belittled students.

The second student echoed her anger that her teammates' complaints were not taken more seriously and asked the board to revise the school district's investigative procedures to better protect students.  The second student also highlighted the coach's social media posts, which appeared to target former players, and believed the coach created a hostile environment.

When the two students concluded their compelling remarks, the board moved on to other speakers and did not respond to or otherwise comment on their allegations.  But the next speaker—a college student raising a different concern—referred to the students comments again, noting that he had "just sat here and listened to these young women stand up here and talk about how the Iowa City School District has not done its due diligence in rooting out predators in their school system."

---

[1] These facts about the students' comments are drawn from the publicly posted video of the school board meeting, which the parties agree we can consider and was provided to the district court via a hyperlink in the parties' summary-judgment papers.

[2] Neither student used Villarini's name during their comments, instead referring only to their "tennis coach."

The next day, the school district placed Villarini on administrative leave. The parties dispute why she was put on leave—Villarini believes it was a knee-jerk reaction to the board meeting, while the school district maintains it learned of a social media post that appeared to target the students who spoke at the meeting. Still, Villarini remained on leave through the end of the school year, receiving full compensation under her contract. And the school district declined to offer her another coaching contract for the next school year.

Two days after the meeting, the school board posted a video recording of the entire meeting on its YouTube channel, as it does for every public meeting. Villarini later asked the school district to take down the video, or at least edit the video to remove the student's comments or add a disclaimer. The school district refused, reasoning that Iowa law "favor[s] public availability to public organizations and meetings." So Villarini sued the school district.

Villarini brought two claims: defamation and "breach of contract/violation of public policy." Villarini alleged the students slandered her during the meeting and the school district republished that slander when it posted the meeting video online. She also argued that removing her as the varsity tennis coach undermined public policy.

The school district moved for summary judgment, arguing, among other things, that posting school board meeting videos online "increase[es] access to its public meetings" and so it should not be vicariously liable for any statements made during those meetings. It also argued that Villarini never identified any contract term that was violated, nor could declining to renew her contract violate any public policy. Villarini, opposing the motion, asserted that the students per-se defamed

her, the school district knew the statements were false and defamatory, and it kept the video posted publicly anyway. As for her other claim, Villarini urged that placing her on leave and not renewing her contract breached a public policy "against school employees being forced out of their jobs by angry parents and students making wild, unfounded allegations for the purpose of ousting that employee."

The district court granted summary judgment for the school district. The court held that Villarini's defamation claim failed on several grounds. As relevant here, the court reasoned the fair-report privilege shielded the school district. Following the Second Restatement of Torts, the court applied the qualified privilege afforded to those who fairly and accurately report on public proceedings. *See* Restatement (Second) of Torts § 611 (Am. L. Inst. 1977) (hereinafter "Restatement"). The court analyzed her second claim as a common-law wrongful-discharge-in-violation-of-public-policy tort and held that Villarini did not articulate any "well-established public policy" grounded in our state's constitution, statutes, or regulations. And so, the district court dismissed both claims. Villarini did not move to reconsider or enlarge this ruling under Iowa Rule of Civil Procedure 1.904(2).

While the summary-judgment motion was pending, the school district moved to amend its answer to raise a new affirmative defense under the municipal qualified-immunity statute. *See* Iowa Code § 670.4A. After granting summary judgment for the school district, the court denied this motion as moot. Villarini now appeals the summary judgment ruling and the school district cross-appeals the denial of its motion to amend.

## II. Defamation and Fair-Report Privilege

We review the district court's grant of summary judgment "for correction of errors at law." *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 36 (Iowa 2018) (cleaned up). The district court must grant summary judgment when the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). Uniquely in defamation cases, when considering summary judgment, the court has "a responsibility to determine whether allowing a case to go to a jury would, in the totality of the circumstances, endanger first amendment freedoms." *Jones v. Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 889 (Iowa 1989) (cleaned up). So the applicability of privileges protecting a statement from liability for defamation "is for the court to decide as a matter of law." *Id.* at 892.

Defamation consists of the twin claims of libel and slander. *Hoffmann v. Clark*, 975 N.W.2d 656, 664 (Iowa 2022). Libel includes written defamatory statements, while slander covers spoken defamatory statements. *Id.* Under either theory, the claim seeks redress for "statements which tend to injure a person's reputation and good name." *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994). To prevail, a plaintiff must show "(1) publication, (2) of a defamatory statement, (3) which was false and (4) malicious, (5) made of and concerning the plaintiff, (6) which caused injury." *Bierman v. Weier*, 826 N.W.2d 436, 443 (Iowa 2013).

At common law, slander needed proof of actual damages. *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004). Over time, exceptions to that rule emerged, allowing certain per-se slanderous statements to proceed absent proof of specific harm. *Id.* Consistent with leading treatises and the Restatement, Iowa

characterizes harmful statements "affecting a person in his or her business, trade, profession, or office as slander per-se." *Id.* (cleaned up); *see also* Restatement, § 573; W. Page Keeton et al., *Prosser & Keeton on the Law of Torts*, § 112, at 788–93 (5th Ed. 1984) (hereinafter "Prosser & Keeton"). And when a private plaintiff sues a nonmedia defendant, establishing slander per se relieves the plaintiff from the burden to prove falsity, malice, and damages. *Bierman*, 826 N.W.2d at 448, 464.

Villarini argues she meets all three elements—the statements were per-se slanderous, the school district published them when it posted the meeting video to YouTube, and the statements concerned her. The school district defends the appeal by resting entirely on the argument that its mere posting of the video containing the student's statements on YouTube is not making or publishing the statements. But the school district conceded at oral argument it has no authority supporting that position. And indeed, it flouts 120 years of precedent. One who republishes a defamatory statement is just as liable to the plaintiff as the original speaker. *See Morse v. Times-Republican Printing Co.*, 100 N.W. 867, 870 (Iowa 1904) ("[I]t is no defense in this class of cases to show that the defamatory publication was first made by another person or newspaper, and was simply copied, with proper credit."); *see also* 50 Am. Jur. 2d *Libel and Slander* § 245 (Aug. 2024 update) (explaining that a republisher may be liable to defamed plaintiff "even though he or she is only repeating the defamatory statement of another, and is careful to ascribe the statements to the original speaker" (cleaned up)). So we cannot affirm the summary-judgment ruling on this basis.

Still, that's not the end of our analysis of whether the district court erred in granting summary judgment. After all, the district court based its decision not on a lack of republication by the school district but on multiple, independent grounds that the school district avoids liability even though it did republish the statements. As the court recognized, even when each element of defamation is present, a defendant may avoid liability by showing the statements are shielded by an absolute or qualified privilege. *Barreca*, 683 N.W.2d at 117. "The law recognizes certain situations may arise in which a person, in order to protect his own interests or the interests of others, must make statements about another which are indeed libelous." *Id.* (citation omitted). Privileged communications are grounded in "the same basis of necessity that is found in other tort laws. Instances abound where the individual must surrender his personal rights and suffer loss for the benefit of the common welfare." *Id.* (cleaned up). Here, the district court reasoned, among the other grounds, that the school district's video falls within the fair-report privilege.[3]

---

[3] It matters not that the school district does not argue for affirmance on this ground because the district court decided it. *See King v. State*, 818 N.W.2d 1, 11–12 (Iowa 2012). Indeed, when urged to the district court by the appellee, we can affirm on grounds *not* decided. *Id.* As the appellee, the school district was not even required to file an appellate brief at all. *See id.* at 12; Iowa. R. App. P. 6.903(3). It is the appellant who "seeks to overturn the judgment" and thus must generally present us with a claim of error before we can consider it as a basis for reversal. *King*, 818 N.W.2d at 11–12. Of course, an appellee makes a perilous choice when it does not defend a district court judgment on every available ground because we are not *required* to affirm on a ground not briefed on appeal. *See id.* at 12. But here we do so with the benefit of the district court's decision and Villarini's briefing that the fair-report privilege should not apply. Ignoring a legally correct ground for summary judgment that was relied on by the district court would serve no purpose and only delay the inevitable dismissal of the suit and waste both the parties' and judicial resources.

"The fair-report privilege is considered to be one of the most powerful and frequently invoked common-law defenses and is widely recognized" by statute or judicial decision in nearly every state. *Salzano v. N. Jersey Media Grp. Inc.*, 993 A.2d 778, 786–87 (N.J. 2010) (cleaned up). It protects republishing "defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern . . . if the report is accurate and complete or a fair abridgement of the occurrence reported." Restatement, § 611. The fair-report privilege furthers the public's interest "in having information made available to it as to what occurs in official proceedings and public meetings." *Id.*, cmt. a; *see also* Prosser & Keeton, § 115 (explaining this "special type of privilege" turns on the republisher "merely being a substitute for the public eye").

Although the privilege is most commonly invoked by newspapers or other media entities, it is not limited to such publishers and instead "extends to any person who makes an oral, written or printed report to pass on the information that is available to the general public." Restatement, § 611 cmt. c; *see also, e.g.*, *McNamara v. Koehler*, 429 P.3d 6, 11–12 (Wash. Ct. App. 2018) (recognizing a "strong public interest in having access to public proceedings" and applying fair-report privilege to law firm who republished allegations made in a pending wrongful death suit on its website).

To fall within the privilege, the republication must accurately and fairly reflect the public meeting. Restatement, § 611 cmt. f. The republished account need not be "exhaustive and complete," but will remain privileged so long as it "conveys to the persons who read it a substantially correct account of the proceedings." *Id.*

This privilege has deep roots in Iowa. Over a century ago, our supreme court recognized a qualified privilege to fairly and accurately report on judicial proceedings. *See Flues v. New Nonpareil Co.*, 135 N.W. 1083, 1085 (Iowa 1912). The court explained the privilege embraces the liberty to republish "everything that occurs publicly in open court" so long as the republication was "made in good faith and solely for public information, and without actual malice." *Id.* (cleaned up); *see also Ballinger v. Democrat Co.*, 212 N.W. 557, 559 (Iowa 1927) (following *Flues* but holding privilege did not apply when republication "did not fairly report" the proceeding); *Hulbert v. New Nonpareil Co.*, 82 N.W. 928, 929 (Iowa 1900) (holding that while republication of judicial proceeding was privileged, additional false statement added by defendant that unintentionally misidentified prosecuting witness was not protected).

Though Villarini's suit concerns republishing statements made publicly during an open school board meeting rather than an open judicial proceeding, we believe the privilege carries equal force. "[O]fficial records and documents open to the public are the basic data of governmental operations." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975). The school district's board members are elected officials, *see* Iowa Code § 277.1, and "in a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government," publicizing the board's operations ensures the electorate can "vote intelligently" or "register opinions on the administration of government generally." *Cox*, 420 U.S. at 492; *see also Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 332–33 (Minn. 2000) (extending fair-report privilege beyond judicial proceedings to reach republishing statements made during city council meetings);

*Wilson v. Meyer*, 126 P.3d 276, 280 (Colo. Ct. App. 2005) (extending fair-report privilege beyond judicial proceedings to reporting on county hospital board of directors meeting, explaining "[a] reporter or publisher must be allowed to convey statements that members of the public would have heard had they attended the public proceeding"). Oft-cited scholarly commentary on Iowa defamation law agrees that our precedent supports this view of the privilege. *See* Patrick J. McNulty, *The Law of Defamation: A Primer for the Iowa Practitioner*, 44 Drake L. Rev. 639, 663–64 (1996); Note, *Iowa Libel Law and the First Amendment: Defamation Displaced*, 62 Iowa L. Rev. 1067, 1074–75 & nn.70–72 (1977).

We find further support in Iowa's open-meetings statutes. All meetings of government bodies, including local school boards, must be open to the public unless a statutory exception permits a closed session. Iowa Code §§ 21.2(1)(b), 21.3(1). Government bodies must prioritize public attendance by giving notice of a meeting's topics and holding its meetings "at a place reasonably accessible to the public and at a time reasonably convenient to the public." *Id.* § 21.4(1)(a), (b). As a corollary to notice, government bodies must also keep minutes of each meeting, which allow those who could not attend the meeting to monitor official actions. *Id.* § 21.3(2). For school board minutes in particular, the board secretary must "[k]eep a complete record of all the proceedings of the meetings of the board." *Id.* § 291.6(2). So the law favors "openness" and public access to meetings of government bodies for the express purpose of assuring "that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people." *Id.* § 21.1. And applying the fair-report privilege to public school board meetings adds scaffolding to our open-government

structure, shielding those that err on the side of transparency by drafting thorough minutes or posting unabridged videos.

On appeal, Villarini makes only two arguments against the district court's holding that the fair-report privilege protects the school district's publication of the video.[4]  First, she contends the "privilege has never been adopted by Iowa's appellate courts." But as discussed above, the privilege has long been recognized. And while our supreme court has not had occasion to map out the precise boundaries of the privilege or to adopt in full the Restatement's drawing of them, we have no trouble applying it here.[5]

Second, Villarini argues the fair-report privilege is inapplicable because it often applies to the news media and "concerns the accuracy of reporting of government proceedings, which is not what we have in this case." But again, Villarini is mistaken—the privilege is not limited to reporting on proceedings by the media.  And through its video recording published online, the school district published an "accurate and complete" "report of an official . . . proceeding." Restatement, § 611.  The school district's conduct thus falls neatly within the bounds of the fair-report privilege.

---

[4] Villarini makes other arguments against the district court's alternative holding that the school district is protected by a different qualified privilege discussed in *Murken v. Sibbel*, No. 00-1239, 2001 WL 1451051, at *2 (Iowa Ct. App. Nov. 16, 2001). But as she does not raise these arguments with respect to the fair-report privilege, we need not consider them to resolve this appeal.

[5] Villarini does not seek to defeat the fair-report privilege by a showing actual malice or bad faith.  So we do not decide whether a lack of improper motive remains a condition of the privilege or it has been replaced by the Restatement's view that only a "fair and accurate report" is required or by the modern actual-malice standard based on a knowing or reckless disregard for the truth of the statements.  *Compare Flues*, 135 N.W. at 1085*, with* Restatement, § 611 cmt. a, *and Barreca*, 683 N.W.2d at 123.

Because the fair-report privilege applies and that privilege forecloses Villarini's defamation claim, we do not consider her other arguments on appeal. And because summary judgment was appropriately granted on the defamation claim, the school district's motion to amend its answer to raise an additional qualified-immunity defense was properly denied as moot.

### III.    Villarini's Public-Policy Claim

Villarini styled her other claim against the school district as a "breach of contract/violation of public policy" claim. Following the parties' briefing and treating the claim like a common-law wrongful-discharge-in-violation-of-public-policy claim,[6] the district court granted summary judgment because Villarini failed to offer an actionable public policy. On appeal, Villarini argues fact disputes over why she was put on leave or the terms of her contract are enough to overcome summary judgment. She also renews her position that Iowa has a recognized public policy "against school employees being forced out of their jobs by angry parents and students making wild, unfounded allegations for the purpose of ousting that employee."

To support a common-law wrongful-discharge claim, a terminated employee must identify a "clearly defined public policy." *Carver-Kimm v. Reynolds*, 992 N.W.2d 591, 598 (Iowa 2023) (cleaned up). The policy must be more than a

---

[6] Villarini argues the district court ignored her "breach of contract claims" when dismissing her case. But she only alleged a single claim. In her summary-judgment resistance she only argued that the claim should be analyzed like a common-law wrongful-discharge claim. And regardless, Villarini never moved to reconsider or enlarge the summary judgment ruling to address any standalone breach-of-contract claim. So she has failed to preserve this issue for appeal. *See Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 883–84 (Iowa 2014).

"broad declaration as to what is generally in the public interest." *Id.* (cleaned up). Instead, Villarini must point to a statute, constitutional provision, or administrative regulation to animate her claim. *Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 110 (Iowa 2011). The existence of a clearly defined public policy is a "question[] of law for the court to resolve." *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 282 (Iowa 2000). And it is thus "generally capable of resolution by a motion for summary judgment." *Id.*

Villarini cannot meet this threshold because her proffered public policy is not grounded in any concrete sources of positive law but rests on her own generalized notions of fairness. That is not enough. *See Nahas v. Polk Cnty.*, 991 N.W.2d 770, 782 (Iowa 2023). Nor does deposition testimony of a school district employee that the school district does not hold unfounded investigations against employees suffice to establish a public policy of our state. Even assuming that stray comment amounts to a practice of the district, again she has not shown it is tied to a written statute, rule, or other source of law as required for the tort.

So Villarini's resort to a fact dispute is irrelevant. Regardless of the facts, her claim rests on an unviable public policy. Thus, the district court properly granted summary judgment on this claim.

**AFFIRMED ON APPEAL AND CROSS-APPEAL.**