# In the Iowa Supreme Court

No. 23–1220

Submitted April 3, 2025—Filed May 16, 2025

**Amie Villarini,**

Appellant,

vs.

**Iowa City Community School District,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Johnson County, Andrew Chappell, judge.

A former school district employee seeks further review of the court of appeals decision affirming the district court's dismissal of her claims of defamation and wrongful discharge in violation of public policy. **Decision of Court of Appeals and District Court Judgment Affirmed.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

James K. Weston II (argued) of Tom Riley Law Firm, Iowa City, for appellant.

Erek P. Sittig (argued), Crystal K. Raiber, and Hayley M. Masching (until withdrawal) of Phelan Tucker Law LLP, Iowa City, for appellee.

**Christensen, Chief Justice.**

After a school district dismissed claims of inappropriate touching and harassment against a former high school tennis coach, two students brought the matter before the district's school board at a public meeting. The students detailed their experiences and called on the school board to update its investigation procedures. The district subsequently posted an unaltered video of the meeting online and placed the coach on paid administrative leave while later declining to renew her contract. The coach asked the district to remove or alter the video with the students' comments, but it refused.

Consequently, the coach brought claims of defamation and wrongful termination in violation of public policy against the district. The district moved for summary judgment, and the district court dismissed the case, reasoning that the republication of the statements was protected by the fair-report privilege and that the coach failed to demonstrate a well-established public policy. The coach appealed and we transferred the case to the court of appeals, which affirmed the district court. We agree on further review.

**I. Background Facts and Proceedings.**

In 2013, Amie Villarini was hired by the Iowa City Community School District (ICCSD) as the varsity girls' tennis coach at Iowa City West High School. She coached the team for several years under a series of one-year contracts. *See* Iowa Code § 279.19A(1) (2022).

At the end of the 2021 tennis season, four tennis team players, along with four parents of the players, issued complaints to West High School Athletic Director Craig Huegel. The complaints alleged that Villarini inappropriately touched players, engaged in favoritism, lied to players, made insensitive or belittling remarks to players, ignored players' mental health, retaliated against

players, and asked players to miss religious services. An investigative report by ICCSD concluded that Villarini had not inappropriately touched any players or engaged in bullying or harassment but recommended that Villarini refrain from touching players as often as possible "[t]o protect herself from future allegations."

At some point after the investigation and before the 2022 tennis season began, Villarini posted her feelings of being undervalued and her opinions on what makes a good teammate on her private Facebook page. ICCSD staff learned of this post and determined that it was directed at former players who did not return for the 2022 season. Huegel addressed the issue with Villarini, and she removed the post.

However, the matter did not end there. On April 12, 2022, former tennis players attended a meeting of the ICCSD board of directors.[1] During the available public-comment time, two former players addressed their concerns with the investigation and their disappointment with its results, but did not directly state Villarini's name. The first student detailed the unwanted touching that Villarini subjected her to and expressed her opinion that the investigation protected Villarini, not the players. The second student expressed her displeasure with the investigation, asked the board of directors to revise this procedure to better protect players, and highlighted Villarini's social media posts that she believed targeted the former players. The board of directors did not address these statements after they were made, but the next speaker during the public-comment time did.

---

[1]Meetings held by the ICCSD board of directors are open to the public. *See* Iowa Code chs. 21, 279. Although not required, ICCSD's policy is to allocate time during each meeting to take comments from the public but the school board does not immediately respond to the comments made.

The day after the meeting, Villarini was placed on paid administrative leave for the rest of her current year-long contract. Deputy superintendent Chace Ramey's affidavit explained that:

> After the April 12, 2022, school board meeting, ICCSD staff was made aware of another social media post made by Ms. Villarini. The post appeared to target students who spoke at the April 12 meeting in a negative way. ICCSD aims to be a safe place for all students and staff felt that Ms. Villarini's social media posts were unprofessional and disrespectful to students. As a result of the second post, Ms. Villarini was placed on administrative leave, as staff did not believe it was appropriate for her to continue coaching at West High.

The social media post in question was posted on Villarini's private Facebook page and was mostly a tribute to her late grandmother. However, at the end of the post Villarini stated, "I'm doing my best to 'turn the page.' And to pray for those who are against me and who spread hate and false judgments."

Villarini disagrees with this explanation and believes that she was placed on leave and her contract was not renewed because of the students' comments at the meeting. To support this conclusion, Villarini argues that Ramey had not seen the post before placing her on leave, as shown by an email where he asks Huegel and the principal of West High School, Mitch Gross, for a screenshot of the post while simultaneously requesting that Villarini be placed on leave. She also notes Huegel's statement that he believes the public comments "influenced [the] decision" to place her on leave and that he would have renewed her contract.

Two days after the meeting, a complete, unaltered video of the meeting was posted on the board of director's YouTube channel.[2] Villarini and her counsel made multiple requests to have the video removed, the comments redacted, or a disclaimer added. However, ICCSD refused to alter the video after consulting

---

[2]Detailed minutes of the meeting were also posted on ICCSD's website.

with counsel, and it remains on YouTube as of the filing date of this decision. In fact, ICCSD does not have a history of removing or altering videos because of objectionable speech during the public-comment section.

On June 2, Villarini brought two claims against ICCSD for defamation and "breach of contract/violation of public policy." She alleged that ICCSD defamed her by republishing slanderous statements and that the school district placed her on leave and did not renew her contract in violation of public policy. In response, ICCSD moved for summary judgment, and the district court granted the motion. Regarding the defamation claim, the district court reasoned:

> [T]he Restatement supports a finding of a privilege on the District's behalf in this situation. Specifically, the Restatement (Second) of Torts counsels that "[t]he publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." Restatement (Second) of Torts § 611 (1977). . . . The Court finds this reasoning persuasive and believes the Iowa Supreme Court would as well.

Additionally, the district court analyzed the second claim as a wrongful termination in violation of public policy claim and determined that Villarini failed to provide a "well-established public policy" that ICCSD violated. In the same order, the district court denied ICCSD's motion to amend its answer to raise a new affirmative defense under Iowa Code section 670.4A because it was moot once summary judgment was granted.

Villarini timely appealed the dismissal of her two claims and ICCSD cross-appealed the district court's denial of its motion to amend. We transferred the case to the court of appeals, which affirmed the district court's decision. We then granted Villarini's application for further review. "We review summary judgment rulings for correction of errors at law." *Myers v. City of Cedar Falls*, 8 N.W.3d 171, 176 (Iowa 2024) (quoting *Feeback v. Swift Pork Co.*, 988 N.W.2d 340, 346

(Iowa 2023)). Summary judgment should be granted when the moving party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "We view the evidence in the light most favorable to the nonmoving party, who is entitled to every legitimate inference that we may draw from the record." *Myers*, 8 N.W.3d at 176 (quoting *Nelson v. Lindaman*, 867 N.W.2d 1, 6–7 (Iowa 2015)).

**II. Analysis.**

**A. Defamation.** Villarini claims that ICCSD defamed her by republishing the statements made by the former players at the school board meeting. Regarding the dismissal of this claim, we will only address the district court's application of the fair-report privilege.[3]

1. *Slander.* First, Villarini argues that the statements made by the students were slanderous per se and that ICCSD can be liable for republishing these statements. In a defamation action, a plaintiff must prove that "the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff." *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021) (quoting *Bierman v. Weier*, 826 N.W.2d 436, 464 (Iowa 2013)). In general, defamation is a published false statement of fact that harms the reputation of an individual. *Id.* The cause of action is split into two torts: slander, which involves an oral statement, and libel, which involves a written statement. *Id.*

---

[3]The district court gave four other reasons for dismissing the defamation claim: Iowa Code section 291.6 requires school districts to keep a complete record of meetings, the court found no caselaw holding a governmental entity liable for defamation because they reposted comments from a public meeting, ICCSD was protected by a qualified privilege, and the school district did not adopt the students' statements or make any defamatory statements of its own. ICCSD also argued that it was not liable because of the privilege afforded to municipalities by Iowa Code section 670.4(1)(*c*) and First Amendment protections. The district court chose not to address these two arguments. We choose only to address the fair-report privilege, which resolves the defamation issue in this case.

This case concerns slander per se. "Words are [slanderous] per se if they are of such a nature, whether true or not, that the court can presume as a matter of law that their publication will have a [slanderous] effect." *Wilson v. IBP, Inc.*, 558 N.W.2d 132, 139 (Iowa 1996) (en banc) (quoting *Vinson v. Linn–Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 116 (Iowa 1984)). Parties do not have to prove malice, falsity, or special harm when statements are slanderous per se. *Id.* We have noted that "[s]landerous imputations affecting a person in his or her business, trade, profession, or office are also actionable without proof of actual harm." *Id.* (alteration in original) (quoting *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994)). ICCSD does not seem to contest that the statements made at the meeting fall into this category.

Additionally, we have long recognized that parties can be liable for republishing defamatory statements, as ICCSD did here. *See Morse v. Times–Republican Printing Co.*, 100 N.W. 867, 870 (Iowa 1904). ICCSD also is a nonmedia defendant, so it does not get the same protection that media defendants receive. *See Vinson*, 360 N.W.2d at 118 (designating a different school district as a nonmedia defendant). Therefore, the question in this case is whether ICCSD's republication of the statements was protected by a privilege that allowed the district court to grant summary judgment in its favor.

2. *The fair-report privilege.* In its summary judgment motion, ICCSD argued that it could not be liable for posting a video of its unaltered school board meeting, which could be construed as an assertion of the fair-report privilege. *Cf., e.g., Fenceroy v. Gelita USA, Inc.*, 908 N.W.2d 235, 240, 242 (Iowa 2018) (concluding that the defendant raised the *Faragher-Ellerth* affirmative defense without specifically naming it). The privilege was applied by the district court, which Villarini did not object to until the case was on appeal. *See Rottinghaus v.*

*Lincoln Sav. Bank* (*In re Est. of Franken*), 944 N.W.2d 853, 858 (Iowa 2020) (noting affirmative defenses may be raised in a summary judgment motion); *Bill Grunder's Sons Constr., Inc. v. Ganzer*, 686 N.W.2d 193, 197–98 (Iowa 2004) ("[I]f the movant has failed to establish its [summary judgment] claim and the court nevertheless enters judgment, the nonmovant must at least preserve error by filing a motion following entry of judgment, allowing the district court to consider the claim of deficiency."). It is a well-documented and long-standing privilege. *See, e.g., Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 842 (Ill. 2006) ("The fair report privilege is a qualified privilege, which promotes our system of self-governance by serving the public's interest in official proceedings, including judicial proceedings."); 3 Restatement (Second) of Torts § 611, at 297 (Am. L. Inst. 1977) [hereinafter Restatement (Second)]. Here, we formally adopt this privilege as articulated in the Restatement (Second) and supported by our caselaw.

> The fair-report privilege protects
>
> [t]he publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern . . . if the report is accurate and complete or a fair abridgement of the occurrence reported.

3 Restatement (Second) § 611, at 297.[4] It covers the report of official proceedings or actions conducted by any level of government, including judicial proceedings. *Id.* § 611 cmt. *d*, at 299. The privilege is most commonly exercised by news outlets, but it may be exercised by other defendants. *Id.* § 611 cmt. *c*, at 299. For example, courts have determined that the privilege covers authors and political

---

[4]This privilege is an affirmative defense. *Peoples Tr. & Sav. Bank v. Baird*, 346 N.W.2d 1, 4 (Iowa 1984) ("In determining what matters must be pleaded as affirmative defenses, we have previously defined an affirmative defense as 'one resting on facts not necessary to support plaintiffs' case.'" (quoting *Baker v. Beal*, 225 N.W.2d 106, 114 (Iowa 1975))).

candidates. *See, e.g.*, *Riley v. Harr*, 292 F.3d 282, 286, 296–97 (1st Cir. 2002) (authors); *Jha v. Khan*, 520 P.3d 470, 475, 485 (Wash. Ct. App. 2022) (political candidates).

This defense is a qualified privilege, but unlike most qualified privileges, it is not defeated by a showing of actual malice. *See, e.g.*, *Barreca v. Nickolas*, 683 N.W.2d 111, 118 (Iowa 2004) ("A qualified privilege is abused, for example, when a defamatory statement is published with 'actual malice.' "). Instead, the privilege may be defeated by a showing that the report of the proceedings or action was not a "substantially correct account" or was edited or altered in a way that is misleading or "convey[s] an erroneous impression to those who hear or read it." 3 Restatement (Second) § 611 cmt. *f*, at 300. Inaccuracy is the measure for this privilege because a defendant's reason for publishing a public proceeding or action is generally irrelevant. Patrick J. McNulty, *The Law of Defamation: A Primer for the Iowa Practitioner*, 44 Drake L. Rev. 639, 664 (1996).

Although we are fully articulating this privilege for the first time, we have recognized a version of it since the early 1900s. At the time, the privilege only covered judicial proceedings and could be defeated by a showing of malice. *See, e.g.*, *Flues v. New Nonpareil Co.*, 135 N.W. 1083, 1085 (Iowa 1912). Here, we are expanding the privilege and updating it so that it covers the report of more proceedings and is defeated by inaccuracy instead of malice, as several other jurisdictions have done. *See, e.g.*, *Wilson v. Meyer*, 126 P.3d 276, 279–80 (Colo. App. 2005); *Solaia Tech.*, 852 N.E.2d at 843–44; *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 331–33 (Minn. 2000) (en banc).

3. *This case.* As the district court recognized, the fair-report privilege protects ICCSD's republication of the students' statements. Villarini argues that the fair-report privilege is defeated because ICCSD posted the video with actual

malice and the comments at issue were not about a matter of public concern. But her first argument is meritless because this privilege is defeated by inaccuracy, and her second argument fails because the video is an accurate report of an official proceeding, not just a meeting open to the public. ICCSD republished statements that the parties seem to agree were slanderous per se, but the republication was in an accurate and completely unabridged report of an official proceeding of the ICCSD board of directors that only expanded access to a meeting that any member of the public could have attended. This case may have been different if ICCSD edited the video, but as the parties agree, the report at issue is an exact reproduction of the meeting.

Moreover, the application of the fair-report privilege to this case furthers Iowa's open meeting laws. Iowa's open meeting laws are meant to "assure, through a requirement of open meetings of governmental bodies, that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people." Iowa Code § 21.1. Government entities, including school boards, must prioritize the accessibility of public meetings. *See id.* §§ 21.3(2), .4(1)(*a*). School districts specifically must "[k]eep a complete record of all the proceedings of the meetings of the board." *Id.* § 291.6(2). ICCSD has chosen to comply with these laws with the most transparency possible, and that should not be punished. The fair-report privilege protects those government bodies that provide the public with a full account of their meetings.

Thus, the district court did not err in dismissing Villarini's defamation claim. The district court also did not err in dismissing ICCSD's motion to amend as moot once the defamation claim was dismissed.

**B. Wrongful Termination in Violation of Public Policy.** Villarini titled her second claim "breach of contract/violation of public policy." In its order, the

district court analyzed the claim as a wrongful termination in violation of public policy claim.[5] To prove a wrongful termination in violation of public policy claim, Villarini must demonstrate:

> (1) the existence of a clearly defined and well-recognized public policy that protects the employee's activity; (2) this public policy would be undermined by the employee's discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason the employer discharged the employee; and (4) the employer had no overriding business justification for the discharge.

*Carver-Kimm v. Reynolds*, 992 N.W.2d 591, 598 (Iowa 2023) (quoting *Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 109–10 (Iowa 2011)). The first two elements are questions of law for the district court to decide. *Id.* We have recognized this tort in three circumstances: "(1) when an employee is discharged 'in retaliation for enforcing a statutory right'; (2) when an employee is discharged for 'refus[ing] to participate in an illegal activity'; and (3) when an employee is discharged for whistleblowing 'by reporting illegalities in the workplace.' " *Id.* (alteration in original) (quoting *Dorshkind v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 300–01, 303 (Iowa 2013)).

Villarini failed to identify a clearly defined and well-recognized public policy that ICCSD violated. She argues that there is a clear public interest in stopping school employees from being removed for unfounded allegations. To

---

[5]Villarini argues that the district court ignored her other claim for breach of contract. While contract employees may bring wrongful termination in violation of public policy claims, breach of contract is a separate cause of action that addresses different issues. *Ackerman v. State*, 913 N.W.2d 610, 617, 618–21 (Iowa 2018). The district court did not ignore Villarini's breach of contract claim because she only pleaded a wrongful termination in violation of public policy claim. A party must prove five elements for a breach of contract claim: "(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach." *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 111 (Iowa 2013). Villarini did not even include the terms of the contract in her petition.

support this, she notes that Ramey admitted that it would have been improper for ICCSD to place Villarini on leave over the statements made at the meeting because those allegations had already been investigated.

However, "we have consistently refused to recognize the existence of alleged public policies based in general and vague concepts of socially desirable conduct, internal employment policies, or private interests." *Berry*, 803 N.W.2d at 110. Instead, we look at statutes, administrative regulations, and constitutional provisions as sources of public policy. *Id.* Villarini's belief, and even Ramey's admission, that it would be improper for school employees to be fired for unfounded allegations does not demonstrate an established public policy. Thus, the district court did not err in dismissing Villarini's second claim.

**III. Conclusion.**

For the foregoing reasons, we affirm the decision of the court of appeals and the district court's dismissal of this case.

**Decision of Court of Appeals and District Court Judgment Affirmed.**